# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KAISER FOUNDATION HOSPITALS, a
California Nonprofit Public
Benefit Corporation, DBA Kaiser
Foundation Hospital-Anaheim,
              *Plaintiff-Appellant,*

          v.

KATHLEEN SEBELIUS,* Secretary of
the United States Department of
Health and Human Services,
              *Defendant-Appellee.*

No. 09-56200

D.C. No.
2:08-cv-02129-
DDP-PJW

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
November 1, 2010—Pasadena, California

Filed June 15, 2011

Before: Alfred T. Goodwin and Johnnie B. Rawlinson,
Circuit Judges, and Jack Zouhary, District Judge.**

Opinion by Judge Rawlinson;
Dissent by Judge Zouhary

---

*Kathleen Sebelius is substituted for her predecessor, Michael O.
Leavitt, as Secretary of the Department of Health and Human Services,
pursuant to Fed. R.App.P. 43(c)(2).

**The Honorable Jack Zouhary, United States District Judge for the
Northern District of Ohio, sitting by designation.

## COUNSEL

Jordan B. Keville (argued), John P. Neustadter and Nina N. Adatia; Hooper, Lundy, & Bookman, Inc., Los Angeles, California, for appellant Kaiser Foundation Hospitals.

Russell W. Chittenden (argued), Leon W. Weidman and Indira Joy Cameron-Banks; Assistant United States Attorneys, Los Angeles, California for appellee Kathleen Sebelius, Secretary of the United States Department of Health and Human Services.

---

## OPINION

RAWLINSON, Circuit Judge:

Kaiser Foundation Hospital-Anaheim (Kaiser), a medicare provider, appealed its notice of program reimbursement for the fiscal year ending in 2001 to the Provider Reimbursement Review Board (PRRB or Board), which dismissed the appeal because Kaiser missed its deadline to file a preliminary position paper. After the Board denied Kaiser's motion for reinstatement of its appeal, Kaiser filed this action. Kaiser now appeals the district court's order granting Sebelius's motion for summary judgment.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court's judgment.

## I. BACKGROUND

### A. *Statutory and Regulatory Framework*

The Medicare Act established a system of health insurance for the aged and disabled. *See* 42 U.S.C. § 1395 *et seq.*

> Eligible beneficiaries receive medical care from "providers," which are medical care facilities that have entered into agreements with the Secretary to furnish care, and the providers are then reimbursed by the Medicare program. Part A of the Medicare program authorizes payments for institutional care

provided primarily on an inpatient basis. *See* 42 U.S.C. §§ 1395c-1395i-4.

Medical care facilities, such as plaintiffs, receive reimbursement under Part A or Part B (or both) from a "fiscal intermediary," . . . that functions as the Secretary's agent in making payment on covered claims. At the close of each fiscal year, a provider must submit a "cost report" to the fiscal intermediary showing the costs it has incurred, and the appropriate portion of such costs to be allocated to the Medicare program during the fiscal period covered by the cost report. 42 C.F.R. §§ 413.20, 413.24.

*Irvine Med. Ctr. v. Thompson*, 275 F.3d 823, 826 (9th Cir. 2002) (citations omitted).

After analyzing a provider's cost report, the fiscal intermediary is to "furnish the provider . . . a written notice reflecting the intermediary's determination of the total amount of reimbursement due to the provider." 42 C.F.R. § 405.1803(a). This notice is commonly referred to as the Notice of Provider Reimbursement (NPR). If a provider "is dissatisfied with the final determination of the . . . fiscal intermediary . . . as to the amount of total program reimbursement[,] . . ." it may obtain a hearing, before the Provider Reimbursement Review Board. 42 U.S.C. § 1395oo(a)(1). "The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report. . ." 42 U.S.C. § 1395oo(d).

The statutory requirements for appealing an intermediary's NPR are that the amount in controversy be at least $10,000, and that the provider file the request for a hearing within 180 days after receiving the NPR. *See* 42 U.S.C. § 1395oo(a)(2) and (3). A group of providers may appeal an NPR if (i) each provider in the group was eligible to request a hearing, (ii) the aggregate amount in controversy is at least $50,000, and (iii)

the matters in controversy involve a common question of fact or interpretation of law or regulations. *See* 42 U.S.C. § 1395oo(b). The Board is endowed with the power to promulgate rules and procedures "which are necessary or appropriate" to hear and decide these appeals. *See* 42 U.S.C. § 1395oo(e).

At all times relevant to this action, the 2002 PRRB Instructions were in effect. Pursuant to those instructions, once the Board received a request for a hearing, it sent an "Acknowledgment and Critical Due Dates" letter to both the provider and fiscal intermediary. PRRB Instructions, Part I(C)(I). This letter notified the provider of the due dates for the preliminary position paper (due to the intermediary) the final position paper (due to the Board) and placed the appeal on the Board's long-term calendar. *See id.*; *see also* PRRB Instructions, Part II(B). When the provider submits its preliminary position paper to the intermediary, it must also submit the first page to the Board. *See* PRRB Instructions, Part II(B)(I). If the provider fails to submit the preliminary position paper by the due date, "the Board will dismiss [the provider's] appeal for failure to follow Board procedure." *Id.* The provider is subject to the same action if it fails to submit its final position paper by the specified due date. PRRB Instructions, Part II(B)(II).

If multiple providers are eligible to bring an appeal based on one common issue regarding a question of fact or interpretation of law, regulation, or Centers for Medicare and Medicaid Services (CMS) ruling, then they may request an "optional" group appeal. PRRB Instructions, Part I(B)(I)(d). If multiple providers "are under common ownership or control and have an issue in common, [they] must file a group appeal if the amount in controversy is $50,000 or more." *Id.* Individual providers may also join a group appeal. *See* PRRB Instructions, Part I(C)(VI) and (VII).

Finally, the Board may consider requests to reinstate appeals that were dismissed due to failure to comply with Board procedure. *See* PRRB Instructions, Part I(C)(XIII)(b).

B.  *Factual Background*

On or around April 18, 2007, Kaiser received its NPR from fiscal intermediary Mutual of Omaha Insurance Company, for the fiscal year ending December, 2001 (FYE 2001). On September 21, 2007, Kaiser timely filed a request for a hearing before the PRRB, and designated counsel for the appeal. *See* 42 U.S.C. § 1395oo(a)(3) (providing 180 days to file an appeal).

Kaiser received the PRRB's "Acknowledgment and Critical Due Dates" letter on October 9, 2007. The letter referred Kaiser to the Board Instructions and set the following deadlines: (1) February 1, 2008, for Kaiser to submit preliminary position papers to the intermediary; (2) April 1, 2008, for the intermediary to submit preliminary position papers to the provider; and (3) June 1, 2008, for both parties to submit final position papers to the Board. The Board also set October, 2008, as a tentative date for the hearing. Finally, the letter stated:

> You are responsible for pursuing your appeal in accordance with the Board's procedures, which are outlined in the Board's Instructions. You must file your position papers, regardless of any outstanding jurisdictional challenges, motions or subpoena requests. If you miss any of your due dates including meeting either position paper due date, the Board will dismiss your appeal. The Board will not send a due date reminder.

Approximately a month after the due date for Kaiser's preliminary position paper passed, the Board advised Kaiser that because its position paper was not submitted to the intermediary, its appeal was being dismissed. On March 4, 2008, Kaiser petitioned the Board for reinstatement of its appeal, and enclosed its Final Position Paper. The Board replied on March

19, 2008, noting the filing of Kaiser's final position paper that included the following arguments for reinstatement:

> -no party was prejudiced and the situation was easily rectifiable in advance of the final position paper deadline and the live hearing;

> -the Board should allow a decision on the merits rather than punish the Provider over a procedural technicality;

> -Federal Statutes and Regulations do not require providers to file preliminary position papers; and

> -the case involves a single issue that would have been transferred to a Common Issue Related Party (CIRP) group.

Nevertheless, the Board denied Kaiser's request, concluding that it was the "Group Representative's responsibility to determine when a CIRP [Common Issue-Related Party] group is required and to structure the group accordingly." The Board also noted that if the issue was previously briefed in the CIRP appeal, Kaiser could have easily reproduced the applicable arguments in a preliminary position paper for its individual appeal. Finally, the Board explained that Kaiser failed to transfer the individual appeal to the CIRP despite Kaiser's counsel's experience in handling cases before the Board.

Kaiser subsequently filed this action against the Secretary of the United States Department of Health and Human Services. Kaiser moved for summary judgment and Sebelius moved for dismissal based on lack of subject matter jurisdiction, or in the alternative, for summary judgment. The district court denied Kaiser's motion for summary judgment and Sebelius's motion to dismiss, but granted Sebelius's motion for summary judgment. Kaiser filed a timely notice of appeal.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm the district court's judgment.

## II.   STANDARD OF REVIEW

"We review *de novo* both the district court's grant of summary judgment and its holdings on questions of statutory interpretation." *Phoenix Mem'l. Hosp. v. Sebelius*, 622 F.3d 1219, 1224 (9th Cir. 2010) (citation omitted). When no issues of fact are raised, and both parties move for summary judgment, we review the issues raised as matters of law. *See Conrad v. Ace Prop. & Cas. Ins. Co.*, 532 F.3d 1000, 1004 (9th Cir. 2008).

Our review of the Board's decision is governed by the Administrative Procedure Act, *see id.*, which provides that the agency's decision will be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . or unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). "Courts must give substantial deference to the Secretary's interpretation of Medicare reimbursement regulations. Under this standard of review, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. In other words, we must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Robert F. Kennedy Med. Ctr. v. Leavitt*, 526 F.3d 557, 561-562 (9th Cir. 2008) (citations and internal quotation marks omitted).

## III.   DISCUSSION[1]

---

[1]Sebelius contends that the Board's decision is not subject to judicial review and that this court thus lacks jurisdiction to hear this appeal. However, 42 U.S.C.§ 1395oo(f)(1) expressly "gives providers the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary." *Loma Linda Univ. Med. Ctr. v. Leavitt*, 492 F.3d 1065, 1074 (9th Cir. 2007) (citation and internal quotation marks omitted).

A.   *The PRRB's Required Submission of a Preliminary Position Paper Does Not Violate the Medicare Act*[2]

Kaiser asserts that the preliminary position paper requirement is "not necessary and appropriate to carrying out the Board's functions."

**[1]** The Board has "full power and authority" to establish rules and procedures for managing its caseload. 42 U.S.C. § 1395oo(e). Pursuant to that authority, the Board promulgated rules requiring the provider to submit a preliminary position paper and a final position paper. The rules specified that failure to submit a preliminary position paper by the due date *would* lead to dismissal of the provider's appeal. PRRB Instructions, Part II(B)(I) (emphasis added). Although the Ninth Circuit has yet to rule on this issue, other courts have held that the procedural requirement of two position papers is reasonable and necessary to the efficient administration of the provider appeals process. *See High Country Home Health, Inc. v. Thompson*, 359 F.3d 1307, 1313 (10th Cir. 2004) ("Because we cannot say that the requirement of a second position paper responding to the Intermediary's preliminary position paper is arbitrary and capricious, we decline to invalidate that requirement indirectly by excusing its violation.") (citation omitted); *see also UHI, Inc. v. Thompson*, 250 F.3d 993, 996-97 (6th Cir. 2001) ("Both the procedural requirement itself, as well as the Department's application of it, are reasonable and necessary to the smooth functioning of the agency appellate process, and therefore cannot be considered arbitrary and capricious or an abuse of agency discretion."); *Rapid City Reg'l. Hosp. v. Sebelius*, 681 F.Supp. 2d 56, 60

---

[2]Kaiser asserts that the Board's rules authorizing dismissals for failure to submit preliminary position papers conflict with the long-standing federal policy codified in the Medicare Act of adjudicating claims on their merits. As Kaiser provides no supporting authority for this contention, we will not discuss it further. *See Barapind v. Reno*, 225 F.3d 1100, 1115 (9th Cir. 2000) (declining to find merit in an argument that was not supported by citation to legal precedent).

(D. D. C. 2010) ("[T]he crafting of such procedural rules is well within agency authority and expertise.") (citations omitted); *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 351 (4th Cir. 2001) (same).

**[2]** We are persuaded by the reasoning of these cases that have upheld the procedural rules as reasonable and necessary to the administration of the Board's substantial caseload. The position paper requirements assist in narrowing the issues on appeal, *see Rapid City Reg'l. Hosp.*, 681 F.Supp. 2d at 62; and efficiently managing the Board's caseload, *see UHI, Inc.*, 250 F.3d at 996-97. They also allow the Board to "ignore late or improperly presented claims." *High Country Home Health*, 359 F.3d at 1311.

**[3]** We are not swayed by Kaiser's citation to the provisions of 42 U.S.C. § 1395oo(a)(1), which grant providers the right to request a hearing before the Board. Rather, we agree with the Fourth Circuit that "a provider's statutory right to a hearing is not unduly burdened by a rule allowing dismissal for failure to file a timely position paper." *Inova*, 244 F.3d at 349.

Kaiser, like the plaintiff in *Rapid City Reg'l. Hosp.*, attempts to distinguish the cases that have upheld dismissals for failure to comply with procedural rules by arguing that the cases involved the late filing of final position papers, which serve a different purpose than preliminary position papers. Kaiser asserted in its briefing and during oral argument that preliminary position papers are *pro forma* documents that were virtually ignored by the Board and intermediaries alike. However, Kaiser failed to cite to any evidence in the record supporting this contention. In any event, as the court in *Rapid City Reg'l. Hosp.* noted, "[t]he decisions . . . do not rely on the unique nature of a final position paper to affirm the Board's dismissals. Rather, the cases rely solely on the more general proposition that legitimate procedural rules can be relied upon to control the Board's docket by dismissing

appeals that are not timely filed." *Rapid City Reg'l. Hosp.*, 681 F.Supp.2d at 61 (citations omitted). Indeed, none of the cases even hinted that failure to file a final position paper should be analyzed differently than failure to file a preliminary position paper.

Kaiser also urges us to hold that its failure to submit a preliminary position paper had no effect on the proceedings before the Board because Kaiser's appeal issues were subject to inclusion in a group appeal. At least one court has rejected a similar argument that failure to submit a position paper did not cause prejudice because a position paper in another case effectively described the provider's claims. *See High Country Home Health*, 359 F.3d at 1313 ("The PRRB was under no duty to hunt around . . . in the records for other cases[ ] in an attempt to discern the nature of [Kaiser's] legal claims. Even assuming that such a hunt would have provided the PRRB with the same information that would have been in the final position paper . . . that does not make the Board's dismissal arbitrary or capricious."). We reach the same conclusion. To hold otherwise would require us to interject ourselves into the inner workings of the Board's hearing process to determine whether the group appeal indeed "effectively described [Kaiser's] claims," as asserted by Kaiser. This we decline to do. *See Fones4All Corp. v. Fed. Commc'n. Comm'n.*, 561 F.3d 1031, 1033 (9th Cir. 2009) (recognizing our obligation to defer to the expertise of administrative agencies).

B.　*The PRRB's Dismissal of Kaiser's Appeal was not Arbitrary or Capricious*

"An agency violates the APA if it has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. " *County of Los Angeles v. Leavitt*, 521 F.3d 1073,

1078 (9th Cir. 2008) (citation, alteration and internal quotation marks omitted). "An arbitrary and capricious challenge requires us to adhere to a narrow scope of review, wherein we are not to substitute our judgment for that of the agency. The agency, however, is required to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choices made, and we in turn must review that explanation, considering whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010) (citations, alteration and internal quotation marks omitted).

**[4]** We review the Board's ruling, keeping in mind the deference we owe to the Board's interpretation of its regulations and the fact that the Instructions unambiguously stated that if a provider failed to file a preliminary position paper, "the Board will dismiss [the] appeal for failure to follow Board procedure." PRRB Instructions, Part II(B)(I). Additionally, the PRRB's October 9, 2007 "Acknowledgment and Critical Due Dates" letter stated: "You are responsible for pursuing your appeal in accordance with the Board's procedures . . . [and] [i]f you miss any of your due dates including meeting either position paper due date, the Board will dismiss your appeal. The Board will not send a due date reminder." The Board cited the Instructions and the letter in its decision, specifically that portion warning of dismissal for failure to submit timely position papers.

**[5]** Although this is an issue of first impression for us, several other courts have held that the Board's decision to dismiss an appeal for failure to timely submit a position paper does not constitute arbitrary and capricious conduct. *See High Country Home Health*, 359 F.3d at 1311-1312 (holding that the Board's dismissal of a provider's appeal because of failure to submit its final position paper, due to staff's failure to properly docket the due date, was not arbitrary and capricious);

*see also Inova*, 244 F.3d at 351 (concluding that dismissal of a provider's appeal because of failure to submit a position paper due to "administrative oversight" was not arbitrary and capricious); *Novacare, Inc. v. Thompson*, 357 F.Supp.2d 268, 272-73 (D. D.C. 2005) (explaining that dismissal because of failure to submit a position paper due to miscommunication with the provider's attorney was not arbitrary and capricious). We join these courts and hold as a matter of first impression in this Circuit, that the Board's dismissal of Kaiser's appeal for failure to file a preliminary position paper as required by the Board's procedural rules was not arbitrary or capricious. Kaiser was forewarned that failure to file the position paper would result in dismissal of the appeal. The Board considered Kaiser's arguments for excusing the failure and denied Kaiser's request to reinstate the appeal. Under these circumstances, we cannot say that the Board abused its discretion.

Kaiser's argument that this panel must review the Board's decision under an "excusable neglect" standard is unavailing. Kaiser propounds an equitable analysis of "excusable neglect" based on Ninth Circuit case law interpreting the Federal Rules of Civil Procedure. Specifically, Kaiser relies on the Fourth Circuit's observation in *Inova* that "[t]he decision to dismiss an administrative appeal is similar to the kind of dismissal decisions that courts routinely review for error" and its citation to several sections of the Federal Rules of Civil Procedure. *Inova*, 244 F.3d at 348. However, the *Inova* court did not itself apply the equitable analysis suggested by Kaiser. Rather, as mentioned earlier, *Inova* explicitly held that "a provider's statutory right to a hearing is not unduly burdened by a rule allowing dismissal for failure to file a timely position paper." *Inova*, 244 F.3d at 349.

Importantly, none of the other cases that have considered a board's dismissal due to a provider's failure to timely file a position paper mentioned, much less applied, an excusable neglect standard. Rather, the issue was resolved under the well-established arbitrary and capricious standard of review.

We adhere to that standard in view of our precedent consistently applying the arbitrary and capricious standard of review when considering challenges to decisions by an administrative body. *See County of Los Angeles*, 521 F.3d at 1078 ("Judicial review of a decision of the PRRB is pursuant to the Administrative Procedure[ ] Act (APA). For this reason, we may not set aside its findings or conclusions unless they are . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.") (citations and internal quotation marks omitted).

"[W]hile an agency should provide a reasoned basis for its actions, we will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned." *Providence Yakima Med. Ctr.*, 611 F.3d at 1190 (citations and internal quotation marks omitted). As discussed above, the Board's decision was explicitly based on Kaiser's failure to adhere to the Board's Instructions and "Acknowledgment and Critical Due Dates" letter. The Board considered the evidence presented and the administrative record prior to dismissing Kaiser's appeal. No abuse of discretion or clear error in judgment was exhibited.

## IV. CONCLUSION

**[6]** The district court committed no error when it granted Sebelius's motion for summary judgment. The Board's Instructions requiring dismissal of claims due to failure to timely submit preliminary position papers did not violate the Medicare Act and the Board's dismissal of Kaiser's claim was neither arbitrary nor capricious.

**AFFIRMED.**

---

ZOUHARY, District Judge, dissenting:

I find that the Board's decision in this case was "arbitrary, capricious, an abuse of discretion . . . or unsupported by sub-

stantial evidence." 5 U.S.C. § 706(2)(a)(e). I understand that substantial deference is given to a Board's decision. However, the facts of this case do not support the Board's decision.

First, there is no other reported decision where the sole issue has been the late filing of a preliminary paper, as opposed to the late filing of a final position paper. The difference between the two is significant. Second, the Board does not always dismiss motions for reinstatement where a filing has been untimely. Third, in light of the Board's inconsistent dismissal of untimely motions combined with the general proposition that procedural rules can be relied on to control the Board's docket, there is little logic to why the Board acted like it did when, in *this* case, a missing preliminary paper and an early final paper did *not* adversely impact the Board's docket. Preliminary paper deadlines are logically not the same as final position paper deadlines, and the Board failed to recite how its decision in this case adversely impacted its docket. Rather, the Board seemed to rely on the curious notion that the experienced hospital lawyers "should have known better," and failed to distinguish how this case differed from other cases where late filings were permitted. Fourth, the Board failed to account for the clear policy reasons favoring the hospital: the lack of prejudice, the subsequent change in the Rules which no longer even require the filing of a preliminary paper (*see* PRRB Rules, Part II, Rule 23.1), the availability of the group appeal where this case would have been transferred (and already disposed of), and the early filing of the final position paper which not only did not delay hearing this case, but arguably advanced the case for resolution or transfer.

Arbitrary and capricious does not mean unfettered discretion by the Board. Dismissal of an appeal for a technical procedural violation, without addressing the factors outlined above, fails to provide guidance for litigants. For these reasons, I respectfully dissent.