**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PAMC, Ltd., a California Limited Partnership, DBA Pacific Alliance Medical Center, *Plaintiff-Appellant*, | No. 12-56652 |
| | D.C. No. 2:11-cv-01373-JAK-MAN |
| v. | |
| Kathleen Sebelius, Secretary of the United States Department of Health and Human Services, *Defendant-Appellee*. | OPINION |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted
March 6, 2014—Pasadena, California

Filed April 8, 2014

Before: Ferdinand F. Fernandez, Susan P. Graber,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Fernandez

# SUMMARY[*]

## Expert Testimony

The panel affirmed the district court's order affirming the Secretary of the Department of Health and Human Services's decision denying PAMC, Ltd., its full Medicare Annual Payment Update for the fiscal year 2009.

PAMC, a certified Medicare provider, failed to make a timely submission of specified data under the Reporting Hospital Quality Data for Annual Payment Update (RHQDAPU) program, and the Centers for Medicare & Medicaid Services reduced PAMC's annual percentage increase by two percent as a result.

The panel held the Department did not act arbitrarily and capriciously when it refused to excuse PAMC's late filing of the required RHQDAPU data by the admittedly applicable deadline. The panel rejected PAMC's claims to a right to equitable relief, or the benefit of the contract doctrine of substantial performance, to excuse its failure to submit timely data.

## COUNSEL

Lloyd A. Bookman and Tracy A. Jessner, Hooper, Lundy & Bookman, P.C., Los Angeles, California, for Plaintiff-Appellant.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Stuart F. Delery, Acting Assistant Attorney General, André Birotte Jr., United States Attorney, Mark B. Stern and Stephanie R. Marcus, Attorneys, Appellate Staff, Civil Division, Department of Justice, Washington, D.C., for Defendant-Appellee.

## OPINION

FERNANDEZ, Circuit Judge:

PAMC, Ltd., dba Pacific Alliance Medical Center, (PAMC) appeals the district court's order affirming the decision of the Secretary of the Department of Health and Human Services (Secretary), which denied PAMC its full Medicare Annual Payment Update for the fiscal year 2009. PAMC had failed to make a timely submission of specified data under the Reporting Hospital Quality Data for Annual Payment Update (RHQDAPU) program, and the Centers for Medicare & Medicaid Services (CMS) reduced PAMC's annual percentage increase by two percent as a result. The Provider Reimbursement Review Board (Board) upheld CMS's decision, and the Secretary declined to review the Board's decision.[1] We affirm.

## BACKGROUND

PAMC is a general acute care hospital that was a duly certified provider of inpatient hospital services under the Medicare program and participated in the RHQDAPU program. PAMC missed the deadline for submitting quality

---

[1] We will sometimes refer to all of these Department of Health and Human Services actors, taken together, as the "Department."

data regarding second-quarter discharges for the fiscal year 2007. The deadline was 11:59 p.m. CST on November 20, 2007. PAMC's third-party vendor, Thomson Reuters (Thomson), which was responsible for submitting PAMC's data, failed to do so until 12:27 p.m. CST on November 21, 2007. Both PAMC and Thomson acknowledged that PAMC's failure to meet the deadline was Thomson's fault. CMS notified PAMC that the failure to timely submit data would result in a two percent reduction of its market basket update.

PAMC filed a request for reconsideration with CMS, and contended that, among other things, it had been diligent, its filing was not very late, and any failure to meet the requirement should be excused because it was due to Thomson's error. CMS denied the request on the basis that the failure to make a timely submission was due to vendor error, which is not a ground for reconsideration.

PAMC appealed the denial of reconsideration to the Board. After a hearing, the Board affirmed CMS's denial of reconsideration. The Board determined that PAMC did not submit its quality data within the timeframe specified by the Secretary and was, thus, subject to a two percent reduction in its annual payment update. The Board observed that Congress had given the Secretary broad authority to implement the RHQDAPU program and that the Secretary had published program procedures in the Federal Register and on the QualityNet Exchange website. The Board explained that it lacked authority to award PAMC equitable relief because PAMC indisputably had failed to meet the applicable deadline and was ultimately responsible for the errors of its own vendor. In addition, the Board determined that even assuming arguendo that the contract doctrine of substantial

performance was applicable, PAMC had not substantially complied with the doctrine's requirements.

PAMC sought review by the Secretary, who declined to review the Board's decision. The Board's decision therefore became the final agency action subject to judicial review.

PAMC sought review of the decision in the district court and contended that the Board erred when it failed to grant PAMC equitable relief and when it determined that PAMC had not substantially complied with the RHQDAPU program requirements. The district court held that neither the Medicare statute nor agency regulations granted CMS or the Board authority to award equitable relief where, as here, a provider has missed the applicable deadline through its own fault or that of its vendor. The court also rejected PAMC's argument that the Board erred by declining to apply the contract doctrine of substantial performance, and held that contract principles are inapplicable to the "statutory and regulatory relationship between HHS and a Medicare provider." This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1395oo(f)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.

"The district court's review of the [Board's] decision, and our *de novo* review of its decision, are governed by the Administrative Procedure Act, 5 U.S.C. §§ 701–706 . . . ." *Cmty. Hosp. of Monterey Peninsula v. Thompson*, 323 F.3d 782, 789 (9th Cir. 2003). Under the Administrative Procedure Act (APA), an agency's decision may be reversed

if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As the Supreme Court has held regarding a hospital's claim to Medicare reimbursement:

> We must give substantial deference to an agency's interpretation of its own regulations. Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. In other words, we must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S. Ct. 2381, 2386-87, 129 L. Ed. 2d 405 (1994) (citations and internal quotation marks omitted). "This broad deference is all the more warranted when, as here, the regulation concerns a complex and highly technical regulatory program . . . ." *Id.* (internal quotation marks omitted); *see also Cmty. Hosp.*, 323 F.3d at 789–90.

## DISCUSSION

PAMC bases its appeal on its claim that the Department acted arbitrarily and capriciously when it refused to excuse PAMC's late filing of the required RHQDAPU data by the admittedly applicable deadline — 11:59 p.m. CST on

November 20, 2007. It claims a right to equitable relief or the benefit of the contract doctrine of substantial performance. In so doing, PAMC appears to have forgotten the aphorism: "Men must turn square corners when they deal with the Government." *Rock Island A. & L. R. Co. v. United States*, 254 U.S. 141, 143, 41 S. Ct. 55, 56, 65 L. Ed. 188 (1920). As we will discuss further, the Department has always insisted that the deadline for submitting data is a square corner, but PAMC now seeks to make it round. It is not entitled to do so.

Ultimately, the issues before us are not unduly complex, but a brief tour of the legal and regulatory structure is necessary.

Under the Medicare statute, 42 U.S.C. §§ 1395–1395kkk-1, the Department reimburses health care providers for services provided to Medicare patients. CMS is charged with administering the Medicare program. Providers receive Medicare reimbursement for inpatient hospital services through the Prospective Payment System[2] and receive an annual percentage update to their payments for inflation.[3] For the relevant period in this case, if a provider did not submit data that related to the quality of care furnished by the provider "in a form and manner, and at a time, specified by the Secretary," its applicable annual percentage increase under the PPS was reduced by two percent. 42 U.S.C. § 1395ww(b)(3)(B)(viii)(I)–(II); 42 C.F.R. § 412.64(d)(2). Data collection is mandated by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, § 501(b), 117 Stat. 2066, 2289–90. Those data

---

[2] 42 U.S.C. § 1395ww(d).

[3] *Id.* § 1395ww(b), (d).

are collected pursuant to the requirements of the RHQDAPU program. *See* 69 Fed. Reg. 28196, 28278 (May 18, 2004). The program's purposes are to give hospitals the incentive to report on quality measures they have used, to improve providers' services, and to educate consumers. *See* 69 Fed. Reg. 48916, 49078 (Aug. 11, 2004); 73 Fed. Reg. 48434, 48597–99 (Aug. 19, 2008).

Congress delegated broad authority to the Secretary to promulgate rules governing the submission of quality data under the RHQDAPU program. *See* 42 U.S.C. § 1395ww(b)(3)(B)(viii)(II) ("Each subsection (d) hospital shall submit data on measures selected under this clause to the Secretary in a form and manner, and at a time, specified by the Secretary for purposes of this clause."). Pursuant to that authority, the Secretary promulgated a regulation implementing the statutory provision[4] and has published instructions in the Federal Register and on the QualityNet Exchange website setting forth the "form and manner" of data submission.[5] The regulation provides that in the case of a hospital "that does not submit quality data on a quarterly basis to CMS, in the form and manner specified by CMS, the applicable percentage change . . . is reduced . . . by 2 percentage points." 42 C.F.R. § 412.64(d)(2)(i)(B). Thus, the full annual percentage increase is predicated on the successful submission of data to CMS by the established deadline. *See, e.g.*, 70 Fed. Reg. 47278, 47421 (Aug. 12, 2005) ("[T]he data for each quarter must be submitted on time . . . . The full annual payment updates will be based on the successful

---

[4] 42 C.F.R. § 412.64.

[5] *See, e.g.*, 73 Fed. Reg. 48434, 48616–19 (Aug. 19, 2008); 72 Fed. Reg. 47130, 47359–61 (Aug. 22, 2007).

submission of data to CMS via the QIO Clinical Warehouse by the established deadlines.").

The Secretary also created an administrative appeals process for the RHQDAPU program. *See* 72 Fed. Reg. 47130, 47365 (Aug. 22, 2007). Under this process, if CMS determines that a hospital did not meet the statutory and regulatory requirements for submission of quality data, and the hospital disagrees with that determination, the hospital may seek reconsideration from CMS. *Id.* But the Secretary has established guidelines for reconsideration. *See* 71 Fed. Reg. 47870, 48041 (Aug. 18, 2006). "CMS has not held a hospital responsible for data processing and communication errors that were clearly under the control of CMS or its contractors." *Id.* "If the error is by the hospital's contracted vendor, the hospital is held responsible." *Id.*

If a hospital is dissatisfied with CMS's disposition of the reconsideration request and meets the applicable amount-in-controversy and time-limit requirements, it may file an appeal with the Board. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835(a). The Board's decision is final unless the Secretary reverses, affirms, or modifies that decision within sixty days. 42 U.S.C. § 1395oo(f)(1). A hospital may seek judicial review of "any final decision of the Board" by filing suit in the United States District Court within sixty days. *Id.*

As already noted, that process was followed in this case, and the issues are now properly before us.

A. *Equitable Relief*

Without pointing to statutory or regulatory authority, PAMC asserts that the Board was required to apply equitable

principles to ameliorate the consequences of PAMC's default. We do not agree.

We agree with the Board that it did not have independent authority to grant equitable relief in these circumstances. No doubt the Secretary established the Board pursuant to a statutory directive,[6] and it has been given the power to "affirm, modify, or reverse [CMS's] findings on each specific matter at issue."[7] But that does not give the Board carte blanche. Rather, as the regulations provide:

> In exercising its authority to conduct proceedings under this subpart, the Board must comply with all the provisions of Title XVIII of the Act and regulations issued thereunder, as well as CMS Rulings issued under the authority of the Administrator as described in § 401.108 of this subchapter. The Board shall afford great weight to interpretive rules, general statements of policy, and rules of agency organization, procedure, or practice established by CMS.

42 C.F.R. § 405.1867. In that regard, the Board was bound to be cognizant of the long-standing view of the Department that:

> CMS has not held a hospital responsible for data processing and communication errors that were clearly under the control of CMS or

---

[6] *See* 42 U.S.C. § 1395oo(a).

[7] 42 C.F.R. § 405.1869(a); *see also* 42 U.S.C. § 1395oo(d).

its contractors.  However, CMS does hold the hospital responsible for its own errors in data processing and communication.  If the error is by the hospital's contracted vendor, the hospital is held responsible.

71 Fed. Reg. 47870, 48041 (Aug. 18, 2006).  PAMC argued, and argues, that this passage demonstrates that CMS has equitable authority and so must the Board.  PAMC's logic is flawed.  In the first place, the fact that CMS does not hold hospitals responsible for CMS's own errors does not suggest an exercise of equitable power; it would certainly seem arbitrary and capricious for CMS to make an error that essentially prevented the proper submission of data and then penalize a hospital for not presenting the data.  But that is nothing like errors by a hospital or its agents.  Secondly, as the Board pointed out, even if CMS has some discretion, that does not demonstrate that the discretion in question was "expanded to the Board" itself.

In this case, there can be little doubt that the failure to file the report on time was not due to CMS's error; rather, as PAMC's vendor admitted at one point, "the error on our part is in no way justified."  In fact, hundreds of other reports had been submitted by that vendor at the proper time; the glitch in the vendor's system could not be ascribed to CMS, which actually sent PAMC a number of alerts about the missing data starting November 1, 2007, nineteen days before the November 20, 2007, deadline.

While we do not question PAMC's good faith efforts to comply, that does not mean that it is entitled to relief from the deadline in question.  Nor does it mean, or even suggest, that CMS, or the Board, or the Secretary

relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Kaiser Found. Hosps. v. Sebelius*, 649 F.3d 1153, 1159 (9th Cir. 2011) (internal quotation marks omitted).

In short, PAMC neither points to any contrary or antithetical decisions by the Department under similar circumstances, nor otherwise demonstrates that the Board acted arbitrarily or capriciously when it denied equitable relief.

B.  *Substantial Performance*

PAMC argues that the Board should have used the contract doctrine of substantial performance to excuse PAMC's failure to submit data at the proper time.  Again, we disagree.

The Board declared that even "[a]ssuming arguendo that the substantial compliance standard can be considered in this case," PAMC's claim failed.  The Board pointed out that the failure to submit the quarterly report on time yields a twenty-five percent error rate for that year, which is not minor; actually, it "is considered a major error."  The Board went on to state "[m]oreover, the Secretary has defined precisely what is required in order for hospitals to receive the full market basket update.  Specifically, the full market basket update is

predicated on the successful submission of data to CMS via the QIO Clinical Warehouse by the established deadline."

That reasoning follows the Department's long-standing strict policy in this area. CMS has been explicit about the need for timely submission of data reports. As it has stated: "[T]he data for each quarter must be submitted on time and pass all of the edits and consistency checks required in the clinical warehouse." 70 Fed. Reg. 47278, 47421 (Aug. 12, 2005). And before the deadline in issue here, CMS responded to a suggestion that hospitals did not have sufficient time to comply by answering:

> The current data submission timeframe is designed to provide sufficient time for hospitals to meet all reporting requirements. Hospitals are given 4½ months following the last day of a discharge quarter to submit accurate data . . . . We believe that this is a sufficient timeframe for the vendor, hospital, QIO or other interested party to identify data errors and submit corrections in advance of the data submission deadline.

71 Fed. Reg. 47870, 48032 (Aug. 18, 2006). Since then, the importance of time limits has, again, been emphasized:

> Our past experience has indicated that the vast majority of hospitals submit accurate data in a timely manner before the quarterly submission deadline. . . . We believe that data submission after the quarterly deadline would result in delays in the quarterly CDAC validation processing, and would adversely

> impact our ability to deliver timely validation
> results to hospitals.

73 Fed. Reg. 48434, 48618 (Aug. 19, 2008). The agency's indication that the vast majority of hospitals do comply is borne out by the evidence in this case. The vendor for PAMC did submit timely data for about 400 other hospitals. The importance of the requirement of timely submission is reflected in the very precision of the deadline itself (here right down to the very minute, 11:59 p.m. CST on November 20, 2007), and is further reflected in the care that CMS takes as the deadline approaches to alert hospitals that their reports have not yet been submitted (here PMAC was called four times, November 1, November 13, November 15, and November 20).

Thus, while it might seem harsh, we do not view the Board's adherence to the policy of strict compliance with a deadline as arbitrary and capricious. Especially is that true when we consider that the whole notion of importing contract doctrines into an area that is a complex statutory and regulatory scheme is problematic. We have, on occasion, stated that providers and others have contracts with the government in this area, but our decisions have turned on the regulatory regime rather than on contract principles. *See, e.g.*, *United States v. Bourseau*, 531 F.3d 1159, 1162, 1169–70 (9th Cir. 2008); *Pac. Coast Med. Enters. v. Harris*, 633 F.2d 123, 125 n.1, 133–35 (9th Cir. 1980). As the Eleventh Circuit Court of Appeals held when hospitals complained of legislative impairment of their contract rights in this area because they had agreements with the Secretary: "Upon joining the Medicare program, however, the hospitals received a statutory entitlement, not a contractual right." *Mem'l Hosp. v. Heckler*, 706 F.2d 1130, 1136 (11th Cir.

1983); *see also Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 669, 105 S. Ct. 1544, 1552, 84 L. Ed. 2d 590 (1985) (stating that while states had "grant agreements" with the federal government and those had a "contractual aspect," the program should not be viewed like a "bilateral contract" and should not "be construed most strongly against the drafter" (internal quotation marks omitted)); *cf. Sebelius v. Auburn Reg'l Med. Ctr.*, __ U.S. __, __, 133 S. Ct. 817, 828–29, 184 L. Ed. 2d 627 (2013) (declining to apply equitable tolling principles to time set by Secretary for appealing to the Board); *Kaiser Found. Hosps.*, 649 F.3d at 1160 (declining to apply excusable neglect equitable analysis to Board's dismissal of case for "failure to timely submit a position paper").

The district court determined that the substantial compliance doctrine does not apply in the Medicare area, but we should not[8] and need not go that far[9]; at the very least, the Board was wise to be cautious about the doctrine and did not act in an arbitrary and capricious manner when it ruled as it did.

## CONCLUSION

Congress mandated the collection of data, directed the Secretary to assure that it was collected, and imposed a

---

[8] *See SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 1577, 91 L. Ed. 1995 (1947); *Anaheim Mem'l Hosp. v. Shalala*, 130 F.3d 845, 849 (9th Cir. 1997).

[9] Of course, we review the district court's decision de novo. Moreover, we can affirm it on any basis supported by the record. *Downs v. Hoyt*, 232 F.3d 1031, 1035–36 (9th Cir. 2000).

penalty on hospitals that did not comply.  The Secretary created the RHQDAPU program for that purpose, and the Department has never deviated from its demand that hospitals' reports be submitted by the precise time specified. PAMC failed to submit a timely report; not very late, but late nevertheless.  PAMC is of the opinion that enforcement of the rigid timing requirement against it was too rhadamanthine, and insists that the Board erred when it refused to ameliorate the result by granting legal or equitable relief.  We, however, are not able to declare that the Board's decision to enforce the submission standards was arbitrary or capricious.

**AFFIRMED.**