# United States Tax Court

161 T.C. No. 4

ORGANIC CANNABIS FOUNDATION, LLC,[1]
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 381-22L, 5442-22L.                    Filed September 27, 2023.

————

P has unpaid tax for 2010, 2011, and 2018. R issued notices of federal tax lien filings to P for all three years. P timely requested a hearing with the Internal Revenue Service Independent Office of Appeals (Appeals) during the 30-day period for requesting a collection due process (CDP) hearing under I.R.C. § 6320(a)(3)(B) (30-day period) for 2010 and 2011 but requested a hearing for 2018 after the 30-day period. Appeals provided a CDP hearing for 2010 and 2011. Appeals determined that P's hearing request for 2018 was untimely and provided an equivalent hearing under Treas. Reg. § 301.6320-1(i)(1). Appeals issued a Notice of Determination for 2010 and 2011 that did not contain a determination for 2018. P filed a Petition seeking review for all 3 years. After the Petition was filed, Appeals issued a Decision Letter for 2018.

R moved to dismiss as to 2018 for lack of jurisdiction on the ground that Appeals did not make a determination for us to review under I.R.C. § 6330(d)(1). P argues that the 30-day period for requesting a CDP hearing under I.R.C.

---

[1] Petitioner has sought review for 2018 in both docket numbers. Docket No. 381-22L results from a notice of determination for 2010 and 2011 in which the Appeals officer refers to 2018, and Docket No. 5442-22L concerns a Petition to review a decision letter issued for 2018.

§ 6320(a)(3)(B) should be equitably tolled. P further argues that Appeals should have made a determination for 2018 for this Court to review. R argues that the 30-day period is a fixed deadline that is not amenable to equitable tolling.

*Held*: Appeals has authority under I.R.C. § 6320 to hold hearings when the taxpayer files a request after the 30-day period set forth in I.R.C. § 6320(a)(3)(B).

*Held, further*, the Treasury regulations under I.R.C. § 6320 do not preclude application of the doctrine of equitable tolling to the 30-day period.

*Held, further*, the 30-day period is subject to equitable tolling where the circumstances warrant it.

*Held, further*, *Kennedy v. Commissioner*, 116 T.C. 255 (2001), is overruled to the extent that it holds that Appeals is not authorized to waive the 30-day period under I.R.C. § 6320(a)(3)(B) and is not obliged to provide a CDP hearing where the circumstances warrant equitable tolling of the 30-day period.

————

*Christian A. Speck*, *Robin Lesley Klomparens*, and *Douglas L. Youmans*, for petitioner in docket No. 381-22L.

*Christian A. Speck*, for petitioner in docket No. 5442-22L.

*Erik W. Nelson*, *Daniel G. Kester*, *Adriana E. Vargas*, *Alexander M. Short*, and *Patsy A. Clarke*, for respondent in docket No. 381-22L.

*Erik W. Nelson*, *Adriana E. Vargas*, *Alexander M. Short*, and *Patsy A. Clarke*, for respondent in docket No. 5442-22L.

OPINION

GOEKE, *Judge*: When the Internal Revenue Service (IRS) files a notice of federal tax lien (NFTL) on a taxpayer's property to collect an unpaid assessment, the Internal Revenue Code gives the taxpayer the right to a collection due process (CDP) hearing with the IRS

Independent Office of Appeals (Appeals). § 6320(a) and (b).[2] The Code requires that the IRS notify the taxpayer in writing of the NFTL filing within five business days of the NFTL filing (5-day notice period) and inform the taxpayer that it has the right to request a CDP hearing during a 30-day period beginning on the day after the 5-day notice period (30-day period). § 6320(a)(1), (3)(B). In these CDP cases respondent has moved to dismiss as to the taxable year 2018 for lack of jurisdiction on the grounds that Appeals did not make a determination for 2018 because petitioner requested a CDP hearing untimely.[3]

Our precedent has construed the 30-day period for requesting a CDP hearing as a fixed deadline. In *Kennedy v. Commissioner*, 116 T.C. 255, 262 (2001), we held that Appeals is not authorized to waive the 30-day period for requesting a CDP hearing and that Appeals is not required to provide a CDP hearing requested after the 30-day period. In *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, 1501 (2022), the Supreme Court held that a different 30-day period in section 6330(d)(1) for a taxpayer to file a petition with this Court for review of Appeals' determination following a CDP hearing is a nonjurisdictional deadline that is subject to equitable tolling. Thereafter, in *Hallmark Research Collective v. Commissioner*, 159 T.C. 126 (2022), we distinguished *Boechler* in holding that the 90-day deadline for filing a deficiency petition under section 6213(a) is jurisdictional. In the light of the Supreme Court's decision in *Boechler* and our opinion in *Hallmark*, we reexamine our precedent as to the 30-day deadline in section 6320(a)(3)(B) for requesting a CDP hearing. We overrule *Kennedy* to the extent that it holds that the 30-day period for requesting a CDP hearing is a fixed deadline that is not amenable to equitable tolling. We hold that the 30-day period in section 6320(a)(3)(B) is subject to equitable tolling.

## *Background*

The following facts are derived from the pleadings, the parties' Motion papers, and the Declarations and Exhibits attached thereto. Petitioner, Organic Cannabis Foundation, LLC, is a California limited

---

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, and regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times.

[3] These cases have been consolidated for trial with the cases at docket Nos. 26889-16, 26890-16, 26891-16, 21033-18, 21034-18, 21035-18, 24708-21L, and 5442-22L. As explained further herein, the collection action for 2018 is also at issue in Docket No. 5442-22L, but the parties have not filed any motions in that case.

liability company that elected to be taxed as a corporation. Its sole member is Northern California Small Business Assistants, Inc. When the Petition was filed, petitioner's principal place of business was in California.

Petitioner has unpaid income tax for 2010 and 2011 that was assessed as deficiencies following the issuance of a notice of deficiency and an untimely filed petition which this Court dismissed by order for lack of jurisdiction. *See Organic Cannabis Found., LLC v. Commissioner*, 962 F.3d 1082 (9th Cir. 2020). Petitioner has unpaid income tax for 2018 that it reported on its 2018 tax return and unpaid penalties.

On April 16, 2019, respondent issued to petitioner a notice of the filing of an NFTL for 2010 and 2011, and petitioner timely requested a CDP hearing during the 30-day period under section 6320(a)(3)(B). On March 15, 2021, respondent filed an NFTL for unpaid 2018 tax with the Recorder Office of Sonoma County, California. On March 16, 2021, respondent issued to petitioner a notice of the NFTL filing for 2018 (2018 notice). The 2018 notice states that the deadline for requesting a CDP hearing was April 22, 2021, although the computation of the 30-day period under the statute would set the deadline as April 21, 2021, measured from the March 15, 2021, filing date. Respondent states that the April 22, 2021, deadline was incorrect but concedes that he issued a notice which gave petitioner the right to request a CDP hearing by April 22, 2021.

On April 23, 2021, petitioner submitted a CDP hearing request for 2018 by fax and by certified mail. Respondent has conceded that petitioner requested the CDP hearing on April 23, 2021, and has treated the request as filed on that date. *See* § 7502. Accordingly, the request was filed one day after the deadline set forth in the 2018 notice. Appeals determined that the hearing request was untimely on the basis of the April 22, 2021, deadline, and provided petitioner with an equivalent hearing under Treasury Regulation § 301.6320-1(i)(1), which petitioner had requested as an alternative to the CDP hearing.[4] The equivalent hearing was combined with the CDP hearing for 2010 and 2011 so that the three years could be considered jointly. The combined hearing was

---

[4] We understand, and respondent has not asserted otherwise, that petitioner raised the issue of the timeliness of its 2018 CDP hearing request before Appeals. It is inappropriate for us to decide whether the circumstances of these cases warrant equitable tolling until we address whether *Boechler* requires us to overrule our precedent that has held that the 30-day period is a fixed deadline not subject to waiver.

held on September 17, 2021, and included discussion of all three years. Thereafter, petitioner did not provide financial information that the Appeals officer had requested or submit an offer-in-compromise as a collection alternative.

On December 13, 2021, Appeals issued a Notice of Determination sustaining the filing of the 2010 and 2011 NFTLs. The header on the Notice of Determination listed the years at issue as 2010, 2011, and "Due Process – EH Levy – 2018." EH is a commonly used acronym for "equivalent hearing." *See Internal Revenue Manual* Exhibit 8.22.4-3 (May 12, 2022). The header is the only time that 2018 is mentioned in the Notice of Determination. An attachment to the Notice of Determination contains the Appeals officer's summary and recommendations and refers only to 2010 and 2011 and petitioner's unpaid assessments for those years.

On January 11, 2022, petitioner filed a Petition for review of the Notice of Determination for 2010, 2011, and 2018. On February 17, 2022, Appeals issued a Decision Letter on Equivalent Hearing for 2018 sustaining the NFTL filing. The Decision Letter stated that petitioner did not request a CDP hearing during the 30-day period and advised petitioner that it did not have the right to dispute Appeals' decision in this Court except that it may dispute Appeals' decision that the hearing request was untimely. After receipt of the Decision Letter, petitioner filed a Petition for review of the Decision Letter, docket No. 5442-22L, which has been consolidated with the case at docket No. 381-22. The parties had not filed any motions in that case.

Respondent filed a Motion to Dismiss for Lack of Jurisdiction on the grounds that petitioner's hearing request for 2018 was untimely and Appeals did not make a determination or issue a notice of determination for 2018 for us to review. In opposing respondent's Motion petitioner argued that its CDP hearing request was timely filed during the 30-day period by challenging the date that the NFTL was filed and the date that the 2018 notice was issued. It also argued that the Notice of Determination contained a determination for 2018 on the basis of the reference to 2018 in the header. Alternatively, it argued that we should extend the reasoning of *Boechler* and apply equitable tolling to the 30-day period for requesting a CDP hearing under section 6320(a)(3)(B). It argued that the circumstances of these cases warrant equitable tolling and that Appeals should have treated its late hearing request as timely and should have issued a notice of determination for 2018.

By Order dated November 14, 2022, we held that petitioner's hearing request for 2018 was untimely in the absence of equitable tolling. The NFTL was filed on March 15, 2021, and the 2018 notice was issued on March 16, 2021. The statutory deadline for filing a timely request for a CDP hearing was April 21, 2021, and the 2018 notice incorrectly stated that the deadline was April 22, 2021. *See* § 6320(a)(3). Regardless, petitioner submitted its request on April 23, 2021, and the CDP hearing request was untimely in the absence of equitable tolling. We further held that in the absence of equitable tolling the Notice of Determination did not contain a determination for 2018 when it is read together with the Attachment despite the reference in the header to 2018. *See Lunsford* v. *Commissioner*, 117 T.C. 159, 161–64 (2001) (stating that the validity of a notice of determination is assessed on its face, and a notice is valid if it clearly states that Appeals has made a determination).

In the November 14, 2022, Order we stated that under *Craig v. Commissioner*, 119 T.C. 252, 259 (2002), where Appeals erroneously concluded that a CDP hearing request was late, the Court has jurisdiction to determine whether the request was timely and to review Appeals' determination irrespective of the label that Appeals used on the document notifying the taxpayer of its determination. We stated that we must determine whether the 30-day period for submitting a CDP hearing request is subject to equitable tolling and, if it is, whether we would have jurisdiction under *Craig* to correct Appeals' determination that the request was late and review as to 2018. We directed the parties to address whether the doctrine of equitable tolling should apply to CDP hearing requests under the principles set forth in *Boechler*. We further directed the parties to examine the full body of law, including Treasury Regulations, relating to whether the 30-day period is a fixed deadline.

In response to our Order respondent concedes that *Craig* would provide the Court with jurisdiction to review a decision letter issued following an equivalent hearing if the taxpayer's hearing request is timely through the application of equitable tolling. Respondent's brief states: "We believe this Court could apply its precedent in *Craig* to hold that a decision letter is a determination in a situation where a taxpayer's otherwise untimely hearing request is deemed timely through the application of equitable tolling.

*Discussion*

I.    *Background*

    A.    *Statutory Provisions of CDP Regime*

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a person liable for tax when a demand for payment has been made and the person fails to pay the tax. A lien arises when an assessment is made, but the Secretary must file an NFTL for the lien to be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor. §§ 6322, 6323(a). The filing of an NFTL sets into action a series of mandates for the IRS and rights for the taxpayer. Section 6320(a) requires the IRS to provide written notice of the NFTL filing to the taxpayer during the 5-day notice period. § 6320(a)(1) and (2). Section 6320(a)(3) describes the information that must be included in the NFTL. Part of the required information is notice that the taxpayer has "the right . . . to request a hearing during the 30-day period beginning on the day after the 5-day [notice] period." § 6320(a)(3)(B).

Section 6320(b) provides taxpayers with a "[r]ight to [a] fair hearing." Section 6320(b)(1) provides the procedural steps that the taxpayer must take to obtain a CDP hearing and also grants authority to Appeals to hold a hearing. It states that "[i]f the person requests a hearing in writing under subsection (a)(3)(B) and states the grounds for the requested hearing, such hearing shall be held by . . . Appeals." By way of cross-reference to subsection (a)(3)(B), the taxpayer has a right to a hearing if it is requested within 30 days beginning on the day after the 5-day notice period for the required NFTL. Taxpayers are limited to one hearing for a taxable year and have a right to a CDP hearing before an impartial Appeals officer. § 6320(b)(2) and (3).

Section 6330 provides similar notice and hearing rights regarding the IRS's intent to levy upon taxpayer property. The time periods for the IRS's written notice of intent to levy and for the taxpayer's hearing request for a proposed levy are slightly different from those for an NFTL. The IRS must provide written notice of intent to levy not less than 30 days before the day of the first levy, and the IRS notice must explain that the taxpayer has the right to request a hearing during that 30-day period. § 6330(a)(2), (3)(B); Treas. Reg. § 301.6330-1(c)(1) (providing that the 30-day period to request a hearing for a proposed levy commences the day after the date of the IRS notice).

The conduct and scope of CDP hearings are governed by section 6330(c), (d), and (e). *See* § 6320(c). Section 6330(c) sets forth the requirements for the conduct and scope "[i]n the case of any hearing conducted under this section." As part of the hearing, the Appeals officer must obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met. § 6330(c)(1). The taxpayer may raise any relevant issues relating to the unpaid tax and proposed collection action and may propose collection alternatives. § 6330(c)(2). After the hearing, the Appeals officer is required to make a determination that takes into consideration the verification process, the issues raised by the taxpayer, and whether the proposed collection action balances the need for the efficient collection of taxes with the taxpayer's legitimate concern that any collection action is no more intrusive than necessary. § 6330(c)(3).

Section 6330(d)(1) allows the taxpayer to petition this Court within 30 days of Appeals' determination. The 30-day deadline for filing a petition is a nonjurisdictional deadline that is subject to equitable tolling. *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1501. We have jurisdiction to review Appeals' determination. § 6330(d)(1). A proposed levy must be suspended until the conclusion of a CDP hearing and any judicial review of Appeals' determination. § 6330(e).

B.    *Legislative History*

The CDP regime was enacted as part of the IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3401, 112 Stat. 685, 746, to establish "formal procedures designed to insure due process where the IRS seeks to collect taxes." H.R. Rep. No. 105-599, at 263 (1998) (Conf. Rep.), *as reprinted in* 1998-3 C.B. 747, 1017. The CDP regime is "designed to afford taxpayers due process in collections [with] increase[d] fairness to taxpayers." S. Rep. No. 105-174, at 67 (1998), *as reprinted in* 1998-3 C.B. 537, 603. The Senate Finance Committee explained that taxpayers should be entitled to the same rights and protections in dealings with the IRS that persons have in dealing with any other creditors and should receive a "meaningful hearing before the IRS deprives them of their property." *Id.*

The conference report indicates that Congress intended that taxpayers that face a levy should have a right to an administrative hearing even if they do not timely request one. It states that "[t]he Secretary must provide a hearing equivalent to the pre-levy hearing if later requested by the taxpayer." H.R. Rep. No. 105-599, at 266,

*as reprinted in* 1998-3 C.B. at 1020. The conference report does not specify any differences between a timely requested hearing and an untimely requested, postlevy hearing except with respect to the suspension of the levy. It states:

> [T]he Secretary is not required to suspend the levy process pending the completion of a hearing that is not requested within 30 days of the mailing of the Notice. If the taxpayer did not receive the required notice and requests a hearing after collection activity has begun, then collection shall be suspended and a hearing provided to the taxpayer.

*Id.*

The conference report separately addresses judicial review of Appeals' determination but says nothing about the taxpayer's right to seek judicial review when a hearing request is untimely. *Contra id.* at 289, *as reprinted in* 1998-3 C.B. at 1043 (stating that for 90-day period of section 6213(a), "[i]f the [deficiency] petition is not filed within that time period, the Tax Court does not have jurisdiction to consider the petition"). It states that the conferees expect Appeals "will prepare a written determination addressing the issues presented by the taxpayer and considered at the hearing. The determination . . . may be appealed to Tax Court." *Id.* at 266, *as reprinted in* 1998-3 C.B. at 1020. The conference report further states that "[n]o further hearings are provided under this provision as a matter of right. . . . However, after the 30 day period had expired, the IRS is not required to provide a hearing or delay any levy . . . ." *Id.*

### C.   *Treasury Regulations*

The Treasury regulations reiterate the 30-day period for requesting a CDP hearing and state that a taxpayer is entitled to a CDP hearing "if the taxpayer timely requests such a hearing." Treas. Reg. § 301.6320-1(b)(1); *see also id.* para. (c)(1), (2), Q&A-C3. Where a taxpayer timely requests a CDP hearing but the request is missing information required by the regulations, the regulations allow the taxpayer to perfect the request within a reasonable time.[5] Treas. Reg. § 301.6320-1(c)(2), Q&A-C1(iii). For example, where a timely request

---

[5] "[T]he IRS will make a reasonable attempt to contact the taxpayer and request that the taxpayer comply with the unsatisfied requirements. The taxpayer must perfect any timely written request . . . within a reasonable period of time after a request from the IRS." Treas. Reg. § 301.6320-1(c)(2), Q&A-C1(iii).

fails to state the grounds for the hearing, the taxpayer may correct that error after the 30-day period. *Id.* Q&A-C1(ii)(E), (iii); *see also id.* Q&A-C1(v) (providing that a taxpayer may affirm a timely request that was signed on its behalf by an unauthorized representative within a reasonable time after the 30-day period). A request that is perfected within a reasonable time is considered timely. *Id.* Q&A-C7. A request that is not perfected within a reasonable period is considered untimely. *Id.*

The regulations explain that if a taxpayer does not request a hearing within the 30-day period, it forgoes the right to a CDP hearing with respect to the unpaid tax and tax periods shown on the NFTL. *Id.*; *see also id.* para. (i)(1) ("A taxpayer who fails to make a timely request for a CDP hearing is not entitled to a CDP hearing."); *id.* para. (c)(3) (example 3) (stating that even if the untimeliness of a taxpayer's hearing request is attributable to the taxpayer's being outside the United States, vacationing, or otherwise not receiving the CDP notice until after the 30-day period expires, the taxpayer still is not entitled to a CDP hearing). However, where taxpayers have failed to include the required information in a timely filed hearing request, the regulations allow taxpayers to provide the missing information after the 30-day period. *See* Treas. Reg. § 301.6320-1(c)(2), Q&A-C1(ii) (listing information that taxpayers must include in hearing requests); *id.* (iii) (allowing taxpayers to provide required information after the 30-day period where defective hearing request is timely). The regulations direct Appeals to determine the timeliness of any hearing request and state that Appeals has the authority to determine the validity, sufficiency, and timeliness of both the NFTL and the hearing request. Treas. Reg. § 301.6320-1(e)(1).

The regulations provide an alternative type of administrative hearing, referred to as an equivalent hearing, to taxpayers that request a hearing after the 30-day period. *See id.* para. (i)(1). We have stated that equivalent hearings have "their genesis in the statute's legislative history and the regulations implementing Congressional intent as gleaned from that history." *Craig*, 119 T.C. at 258. When a hearing request is untimely, the taxpayer will be notified of the request's untimeliness and offered an equivalent hearing without needing to submit an additional request. Treas. Reg. § 301.6320-1(c)(2), Q&A-C7. The regulations set a one-year deadline for taxpayers to request an equivalent hearing beginning on the day after the 5-day notice period. *Id.* para. (i)(2), Q&A-I7. An equivalent hearing is held by Appeals and generally follows the same procedures as a CDP hearing. *Id.* subpara. (1). Appeals will consider the same issues that it would have

considered at a CDP hearing on the same matter. *Id.* subpara. (2), Q&A-I2. However, after an equivalent hearing Appeals issues a different type of document called a decision letter about its conclusions to sustain or proceed with the collection action. *Id.* subparas. (1), (2), Q&A-I5. A decision letter contains all the information that must be included in a notice of determination except it states that the taxpayer cannot seek judicial review of the decision letter. *Id.* subpara. (2), Q&A-I5 and Q&A-I6.

The regulations state that taxpayers cannot seek judicial review of the outcome of an equivalent hearing. *Id.* Q&A-I6. They provide that "[s]ection 6320 does not authorize a taxpayer to appeal the decision of Appeals with respect to an equivalent hearing." *Id.* We have held that taxpayers are not entitled to seek judicial review of a decision letter issued following an equivalent hearing. *Moorhous v. Commissioner*, 116 T.C. 263, 269–70 (2001); *Kennedy*, 116 T.C. at 262.

According to the regulations, an equivalent hearing has one additional difference from a CDP hearing. Collection actions are suspended during a timely requested CDP hearing and any judicial review. § 6330(e)(1). During an equivalent hearing, collection action may be suspended on a case-by-case basis, but collection is not required to be suspended. Treas. Reg. § 301.6320-1(i)(2), Q&A-I4 ("Appeals may request the IRS office with responsibility for collecting the taxes to suspend all or some collection action . . . if it determines that such action is appropriate or necessary under the circumstances.").

D.    *Review of an Appeals' Determination*

Section 6330(d)(1) permits taxpayers to petition this Court to review a determination by Appeals sustaining a collection action. When a taxpayer fails to request a CDP hearing timely, Appeals is not required to make a determination and accordingly there is no determination for this Court to review.[6] *Ramey v. Commissioner*, 156 T.C. 1, 11 (2021);

---

[6] Petitioner states that after Appeals has held a hearing, nothing in the statute conditions our review on Appeals' decision on the timeliness of the hearing request. We do not understand petitioner to challenge that a determination is required for our review. Rather, petitioner seems to argue that we may review Appeals' decision with respect to the 2018 notice because Appeals held one joint hearing for 2010, 2011, and 2018 and Appeals made a determination for 2010 and 2011. We rejected this argument in our Order dated November 14, 2022. Appeals is authorized to hold hearings for different tax periods at the same time and may combine an equivalent hearing with a CDP hearing. Treas. Reg. § 301.6320-1(d)(1), (2), Q&A-D2 and Q&A-D3, (i)(1).

*Offiler v. Commissioner*, 114 T.C. 492, 498 (2000). Accordingly, the absence of a determination is grounds for dismissal for lack of jurisdiction. *LG Kendrick, LLC v. Commissioner*, 146 T.C. 17, 31 (2016), *aff'd*, 684 F. App'x 744 (10th Cir. 2017); *see Laing v. United States*, 423 U.S. 161, 165 n.4 (1976) (issuing a valid notice of deficiency is a jurisdictional prerequisite to filing a deficiency petition in the Tax Court under section 6213(a)).

Taxpayers may not seek review by this Court of a decision letter issued after an equivalent hearing; a decision letter does not constitute a determination. *See Orum v. Commissioner*, 123 T.C. 1, 11 (2004), *aff'd*, 412 F.3d 819 (7th Cir. 2005); *Moorhous*, 116 T.C. at 270; *Kennedy*, 116 T.C. at 263. And as we have said, the issuance of a decision letter rather than a determination turns on the timeliness of a taxpayer's hearing request. Thus, the question of whether the 30-day deadline of section 6320(a)(3)(B) may be equitably tolled affects our power to review the outcome of an Appeals hearing. We could review the outcome of an Appeals hearing where we determine that Appeals erroneously concluded that a CDP hearing request was untimely and erroneously provided an equivalent hearing. In such instance we can correct that error and review the decision of the equivalent hearing as a determination irrespective of the label that Appeals used on the document notifying the taxpayer of the outcome of the Appeals hearing. *See Craig*, 119 T.C. at 259.[7]

In these cases, we must determine whether Appeals should have made a determination with respect to the 2018 notice. To answer that question, we must first decide whether the 30-day period for requesting a CDP hearing is subject to equitable tolling. If it is subject to tolling, a followup question is whether the circumstances of these cases warrant equitable tolling. If Appeals should have equitably tolled the 30-day period for requesting a CDP hearing, then Appeals should have made a determination for 2018, issuance of the Decision Letter for 2018 rather than a notice of determination would have been erroneous, and we could review Appeals' action with respect to 2018 as a determination.

---

[7] We treat a decision as a determination (as opposed to remanding the case to Appeals for further consideration) because, under the regulations, the two resolutions generally are equivalent apart from the timeliness of the taxpayer's hearing request and the availability of judicial review. *See* Treas. Reg. § 301.6320-1(i).

E.    *Tax Court Precedent*

In *Kennedy*, 116 T.C. at 262, we held that the 30-day period for requesting a CDP hearing for a proposed levy under section 6330(a)(3)(B) is a fixed deadline. We stated that "section 6330 does not authorize" the Commissioner to waive the time restrictions imposed therein. *Kennedy*, 116 T.C. at 262. We held that when a taxpayer fails to request a CDP hearing timely, Appeals is "not obliged to conduct the administrative hearing contemplated under section 6330(b)" and "the decision to conduct an equivalent hearing did not result in a waiver by [the Commissioner] of the time restrictions within which [the taxpayer is] required to request an Appeals Office hearing under section 6330." *Id.* We have interpreted *Kennedy* as also applying to the 30-day period for requesting a CDP hearing for an NFTL filing under section 6320(a)(3)(B). *Andre v. Commissioner*, 127 T.C. 68, 70 (2006). We now reconsider these holdings.

II.    *Statutory 30-Day Administrative Deadline*

As a threshold matter, we must decide whether Appeals has authority under the statute to review collection actions where the taxpayer fails to submit a hearing request within the 30-day period.[8] Such an administrative deadline is said to be "jurisdictional" if it defines the agency's authority to hold hearings for untimely requests. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013). An administrative deadline that is "non-jurisdictional" is a claim-processing rule that does not deprive the agency's authority to hold hearings where the deadline was missed. *See id.* at 154–56.

A filing deadline that is "jurisdictional" cannot be equitably tolled. *Id.* at 154; *see also United States v. Kwai Fun Wong*, 575 U.S. 402, 408–09 (2015). Accordingly, before we can consider whether the 30-day period of section 6320(a)(3)(B) is subject to equitable tolling, we must decide whether it is a "jurisdictional" deadline, i.e., whether Appeals has authority to hold hearings for untimely hearing requests. *See Santos-Zacaria v. Garland*, 143 S. Ct. 1103, 1112 (2023). For the sake of simplicity, we will refer to the question of whether the 30-day filing deadline of section 6320(a)(3)(B) is "jurisdictional" or "non-jurisdictional" in terms of whether the 30-day deadline imposes an

---

[8] Respondent does not argue that Appeals lacks authority to hold an administrative hearing for taxpayers that submit untimely hearing requests. Rather, he argues that the 30-day period is fixed and not subject to equitable tolling.

"administrative bar" to Appeals' authority to hold hearings. If it imposes an administrative bar, it is "jurisdictional" with respect to Appeals' authority and Appeals does not have authority to hold hearings for untimely hearing requests and the deadline cannot be equitably tolled. In such instances the term "jurisdictional" does not refer to this Court's jurisdiction to review Appeals' determinations to sustain collection actions although it would also affect our jurisdiction.

The Supreme Court has applied the same principles to resolve whether an administrative filing deadline is an administrative bar that it applies to determine whether a judicial filing deadline is jurisdictional. *Auburn Reg'l Med. Ctr.*, 568 U.S. at 154–56. It has explained that every filing deadline must state, by definition, a time after which a claim is barred but "most time bars . . . are nonjurisdictional." *Kwai Fun Wong*, 575 U.S. at 403; *see also Wilkins v. United States*, 143 S. Ct. 870, 877 (2023); *Auburn Reg'l Med. Ctr.*, 568 U.S. at 154 ("[W]e have repeatedly held that filing deadlines ordinarily are not jurisdictional . . . ."). It has "described filing deadlines as 'quintessential claim-processing rules,' which 'seek to promote the orderly progress of litigation,' but do not deprive a [tribunal] of authority to hear a case." *Kwai Fun Wong*, 575 U.S. at 410 (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). Jurisdictional deadlines are "rare." *Id.* However, even where an administrative deadline is not an administrative bar, the deadline might not be subject to equitable tolling. *Auburn Reg'l Med. Ctr.*, 568 U.S. at 158–60 (finding an administrative deadline for Medicare providers to request an administrative hearing about reimbursements was not an administrative bar (it was non-jurisdictional) but was not amenable to equitable tolling). A statute and regulations thereunder may categorically preclude equitable tolling of a nonjurisdictional deadline.[9] *Id.*; *see Kwai Fun Wong*, 575 U.S. at 408.

For a filing deadline to be an administrative bar, Congress must clearly state that the deadline has that effect.[10] *Arbaugh v. Y & H Corp.*,

---

[9] Respondent does not argue that the 30-day deadline is an administrative bar but argues that equitable tolling is nevertheless categorically precluded.

[10] The Supreme Court has also held that a judicial filing deadline is jurisdictional on the basis that a long line of Supreme Court precedent left undisturbed by Congress is a clear indication that Congress intended it as such. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008); *Bowles v. Russell*, 551 U.S. 205 (2007). This principle of statutory construction is referred to as the prior-construction canon. *See Hallmark*, 159 T.C. at 153. In *Boechler, P.C. v. Commissioner*, 142 S. Ct.

546 U.S. 500, 515 (2006); *see Kwai Fun Wong*, 575 U.S. at 408–09. "[A]bsent such a clear statement . . . 'courts should treat the restriction as nonjurisdictional . . . .'" *Auburn Reg'l Med. Ctr.*, 568 U.S. at 153 (quoting *Arbaugh*, 546 U.S. at 516). The clear statement requirement is a "high bar." *Kwai Fun Wong*, 575 U.S. at 409. A filing deadline is not an administrative bar even when it is important and framed in mandatory and emphatic terms. *Id.* at 410. Under the clear statement rule, it is not sufficient that the interpretation that makes the deadline an administrative bar is more plausible or even better than one that does not. *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1499 ("But in this context, better is not enough."). Where a statutory filing deadline is subject to multiple plausible interpretations, some of which would make the deadline an administrative bar, it is difficult to make the case that such a reading is clear. *Id.* "Congress must do something special, beyond setting an exception-free deadline," to make it an administrative bar and prohibit its tolling.[11] *See Kwai Fun Wong*, 575 U.S. at 410.

We must decide whether section 6320 contains a clear statement that the 30-day period for requesting a CDP hearing is an administrative bar, i.e., that Appeals' authority to review collection actions is conditioned on the taxpayer submitting a CDP hearing request within the 30-day period. Traditional rules of statutory construction must plainly show that Congress imposed a procedural bar that would deprive Appeals of authority to review collection actions. *Id.* We examine the text, context, and relevant historical treatment of the statute to determine whether Congress made the required clear statement. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010); *see Kwai Fun Wong*, 575 U.S. at 410-12. "Most important" is the text of the statute. *Kwai Fun Wong*, 575 U.S. at 410.

We begin by looking at the text of the statute. The 30-day deadline is in section 6320(a)(3)(B), the part of the statute that is directed at the

---

at 1500, the Supreme Court declined to apply this canon to interpret the section 6330(d)(1) filing deadline. No Supreme Court precedent supports a construction of the 30-day period of section 6320(a)(3)(B) as an administrative bar. The prior-construction canon may also be invoked without Supreme Court precedent when, in the lower courts, there has been an "unwavering line of administrative and judicial interpretation," *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998), as in *Hallmark*, 159 T.C. at 153–63, where we held that the 90-day deadline of section 6213(a) for filing a petition with this Court for review of a notice of deficiency is jurisdictional. But as to the 30-day deadline at issue here, we discern no "unwavering line" of precedent. Consequently, we find the prior-construction canon inapplicable here.

[11] We did not consider these concepts in *Kennedy*, 116 T.C. 255.

requirement that the IRS notify the taxpayer of an NFTL filing and that provides the required contents of the IRS's notice. Section 6320(a)(3)(B) establishes when a hearing request will be timely. It does not speak in terms of Appeals' authority to review collection actions or otherwise refer to Appeals' authority to consider untimely hearing requests.

Section 6320(b)(1) provides the grant of authority to Appeals to hold CDP hearings. It does not expressly condition Appeals' authority on a timely filed hearing request, and nothing in the statute prohibits Appeals from providing CDP hearings to taxpayers that file untimely requests. Section 6320(b)(1) also states what the taxpayer must do to obtain a CDP hearing; the taxpayer must "request[] a hearing in writing under subsection (a)(3)(B) and state[] the grounds for the requested hearing." The cross-reference to the 30-day period is in the part of the sentence directed at what the taxpayer must do to obtain a CDP hearing. It is not directed at Appeals' authority to review collection actions. *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500 ("[I]ts short, 30-day time limit is directed at the taxpayer, not the court."). Moreover, the fact that the cross-reference to the 30-day period is in the same sentence as the grant of authority to Appeals is not a clear statement of congressional intent that the untimeliness of a CDP hearing request would deprive Appeals of authority to review the collection action. *See id.* at 1499; *Gonzalez v. Thaler*, 565 U.S. 143, 147 (2012) ("Mere proximity will not turn a rule that speaks in nonjurisdictional terms into a jurisdictional hurdle."); *see also Auburn Reg'l Med. Ctr.*, 568 U.S. at 155 (finding deadline and grant of authority in same section).

While a plausible interpretation of section 6320(b)(1) may be that Appeals' authority is limited to timely requested CDP hearings, we learned from *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1499, that even the most plausible reading is not enough. There is no clear statement in the text of section 6320 that requires a taxpayer to comply with the 30-day deadline for Appeals to have authority to review a proposed collection action, and thus, we hold that the 30-day period is not an administrative bar.

III.  *Equitable Tolling*

Having decided that the 30-day deadline for requesting a CDP hearing is not an administrative bar, we must decide whether it is amenable to equitable tolling. Respondent argues it is not; he argues that it is a fixed deadline and equitable tolling is categorically precluded.

The Supreme Court has adopted a rebuttable presumption that "nonjurisdictional" filing deadlines are subject to equitable tolling in suits against the government. *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 95–96 (1990). "Equitable tolling is a traditional feature of American jurisprudence and a background principle against which Congress drafts limitations periods." *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500; *see Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are 'customarily subject to "equitable tolling,"' unless tolling would be 'inconsistent with the text of the relevant statute . . . .'" (first quoting *Irwin*, 498 U.S. at 95; and then quoting *United States v. Beggerly*, 534 U.S. 38, 48 (1998))). The Supreme Court adopted the tolling presumption as a rule of statutory interpretation to reflect congressional intent. It reasoned that the presumption is "likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation."[12] *Irwin*, 498 U.S. at 95. The presumption replaced the Court's "ad hoc" approach to determining whether filing deadlines are subject to equitable tolling which had produced "unpredictability without the corresponding advantage of greater fidelity to the intent of Congress." *Id.*

To rebut the presumption, there must be an affirmative indication from Congress that it intended to preclude equitable tolling. *Kwai Fun Wong*, 575 U.S. at 420. The presumption is rebutted if there is "good reason to believe that Congress did not want the equitable tolling doctrine to apply," *Brockamp v. Commissioner*, 519 U.S. 347, 350 (1997), or where equitable tolling "is inconsistent with the text of the relevant statute," *Beggerly*, 524 U.S. at 48 (citing *Brockamp*, 519 U.S. 347). Courts examine the statute's text, context, and purpose to determine whether Congress intended to rebut the presumption. *See Arellano v. McDonough*, 143 S. Ct. 543, 548 (2023); *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500; *Holland v. Florida*, 560 U.S. 631, 647 (2010); *Brockamp*, 519 U.S. at 350.

Petitioner relies on the tolling presumption. Respondent does not directly challenge application of the presumption. He states "assuming the presumption applies to agencies," it is rebutted here. The presumption does not apply to all administrative deadlines. In *Auburn*

---

[12] In adopting the presumption, the Supreme Court recognized that once Congress has waived sovereign immunity, allowing equitable tolling "amounts to little, if any, broadening of the congressional waiver" and the "same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply." *Irwin*, 498 U.S. at 95–96.

*Regional Medical Center*, 568 U.S. at 161, the Supreme Court did not apply the presumption to a filing deadline for institutional Medicare providers to appeal reimbursement decisions to an administrative agency, stating that "[w]e have never applied the *Irwin* presumption to an agency's internal appeal deadline," *id.* at 158. In *Brockamp*, 519 U.S. at 350–51, the Supreme Court assumed for the sake of argument that the presumption applied to tax refund claims but held that, even if it did apply, the presumption was rebutted. And in analyzing its own authority to hear a case (rather than the authority of the relevant administrative agency), the Supreme Court has since allowed equitable tolling of an agency filing deadline but did not address the presumption.[13] *Kwai Fun Wong*, 575 U.S. at 407 (finding that equitable tolling of an administrative deadline under the Federal Tort Claims Act was permitted for determining if the statutory prerequisites to bringing a claim in court were satisfied).

Absent the presumption, courts have used traditional tools of statutory construction to determine whether equitable tolling is consistent with the text of the statute and congressional intent for enacting the statute. *Bowen v. City of New York*, 476 U.S. 467, 480 (1986). "[W]hether equitable tolling is available is fundamentally a question of statutory intent." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). Pre-*Irwin* cases consider the text, context, and purpose of the statute to determine whether Congress intended for a deadline to be nonjurisdictional and thus open to equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–94 (1982) (filing a timely complaint with Equal Employment Opportunity Commission is not a jurisdictional prerequisite to suit in federal court and is subject to waiver, estoppel, and equitable tolling). Post-*Irwin* cases also consider the statute's text, context, and purpose to determine whether there is a congressional intent to rebut the presumption. *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500; *Holland*, 560 U.S. at 647; *Brockamp*, 519 U.S. at 350.

Before we proceed, it is worth noting that the cases before us differ from most of the cases cited above in an important respect. With a few exceptions, those cases generally analyze equitable tolling in the

---

[13] In *Kwai Fun Wong*, 575 U.S. at 408 n.2, after finding that the agency and judicial deadlines at issue were nonjurisdictional, the Supreme Court held that both were subject to equitable tolling without separately addressing that issue because the government relied on the same indicia of congressional intent for its jurisdictional and tolling arguments and made no independent argument against equitable tolling.

context of determining whether and how, under the relevant statutory provisions, a court (as opposed to an administrative agency) may consider a case. In *Kwai Fun Wong*, 575 U.S. 402, for example, the Supreme Court considered the Federal Tort Claims Act (FTCA), which stated, in relevant part, that a tort claim against the United States is "forever barred" unless it is presented to the appropriate federal agency within two years after the claim accrues. The Court decided that, for purposes of a *court's* consideration of a claim under the FTCA, the *court* may equitably toll the two-year deadline. *Id.* at 412. Similarly, in *Zipes*, 455 U.S. at 388–89, the Court considered Title VII of the Civil Rights Act of 1964, which required, in relevant part, that individuals pressing employment discrimination claims file charges with an administrative agency by a certain time before bringing suit in court. The Court concluded that, for purposes of determining a *court's* authority to hear a case under the relevant provisions, the administrative filing deadlines were nonjurisdictional and subject to equitable tolling (also waiver and estoppel) *by the court. Id.* at 393; *see also Brockamp*, 519 U.S. 347 (considering whether, in determining a *court's* authority to entertain a tax refund claim, the *court* may apply equitable tolling to the underlying administrative deadline).

By contrast, in the cases before us we decide whether an *agency* must consider equitable tolling in administering its own deadline—specifically, in determining whether to grant a CDP hearing. Additional considerations may well be relevant in this type of case.[14] Here, however, we conclude that the circumstances are sufficiently analogous to apply the caselaw we describe above, for two principal reasons.

First, while the context of our case is unusual, it is not unique, and in similar cases courts have applied general equitable tolling principles. For example, the U.S. Court of Appeals for the Eleventh Circuit has considered an agency's administration of its own deadlines in the immigration context. *See Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357 (11th Cir. 2013). Applying the relevant caselaw, the court held that the Board of Immigration Appeals was required to consider equitable tolling when enforcing certain deadlines for seeking its review. *Id.* at 1364. On similar facts, other courts of appeal have reached the

---

[14] For example, implementing regulations may opine on the availability or nonavailability of equitable tolling, *see Auburn Reg'l Med. Ctr.*, 568 U.S. at 157, and we address this point further below. Additionally, some administrative deadlines may be purely internal, with no implications for a court's authority to review a claim. *See, e.g., PAMC, Ltd. v. Sebelius*, 747 F.3d 1214 (9th Cir. 2014). The presence or absence of such considerations may well affect our analysis in future cases.

same conclusion. *See, e.g.*, *Harchenko v. INS*, 379 F.3d 405, 409–10 (6th Cir. 2004); *Riley v. INS*, 310 F.3d 1253, 1258 (10th Cir. 2002); *Socop-Gonzalez v. INS*, 272 F.3d 1176 (9th Cir. 2001). And when, in a different context, the Supreme Court considered the same question—whether an agency was required to equitably toll its own deadline—the Court did not hold the caselaw inapplicable; rather, it distinguished the cases according to the particular circumstances before it.[15] *See Auburn Reg'l Med. Ctr.*, 568 U.S. at 158–60.

Second, and significantly, the agency deadline at issue here implicates judicial review in much the same way as the deadlines in *Kwai Fun Wong*, *Zipes*, and other similar cases did, albeit less directly. Equitable tolling cases typically involve a straightforward court filing deadline, *see, e.g.*, *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, or else an agency filing requirement that must be satisfied before a court can hear a case, *see, e.g.*, *Kwai Fun Wong*, 575 U.S. 402. And they typically hold that, in appropriate cases, courts may toll the relevant deadlines, whether they be administrative or judicial, to preserve the court's ability to consider the case.

Here, the mechanics are different, but the effect is the same. Specifically, this Court's review under section 6330(d)(1) is predicated on Appeals' issuing a determination rather than a decision. And under the implementing regulations, the only criteria Appeals considers in determining whether to issue a decision (which we cannot review) and a determination (which we can review) is the timeliness of a taxpayer's CDP hearing request. Thus, the 30-day filing deadline, administered by Appeals, governs the Court's ability to hear a CDP case in much the same way as the deadlines at issue in the other cases. In other words the 30-day deadline in substance operates as a statute of limitations for a taxpayer's right to seek judicial review. *Cf. Lozano*, 572 U.S. at 13–14 (explaining that equitable tolling is most appropriately applied to statutes of limitations, which "establish the period of time within which a claimant must bring an action" (quoting *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013))).

Accordingly, cases that consider equitable tolling in these related contexts are instructive in our examination of congressional intent. *See id.* at 10 ("Because the doctrine effectively extends an otherwise discrete

---

[15] Those circumstances included, among other things, the governing regulations, which the Court read as precluding equitable tolling. *Auburn Reg'l Med. Ctr.*, 568 U.S. at 157.

limitations period set by Congress, whether equitable tolling is available is fundamentally a question of statutory intent."). We place significant weight on the Supreme Court's understanding of congressional intent under the CDP regime as stated in *Boechler*. Even without a presumption in favor of equitable tolling, we are convinced that equitable tolling of the 30-day period to request a CDP hearing is consistent with the text of the statute and congressional intent for enacting the CDP regime.

A.     *Terms of the Statute*

Section 6320(b) unambiguously provides taxpayers with the right to a CDP hearing if timely requested. However, it does not expressly address equitable tolling, and its plain text does not preclude equitable tolling. Rather, it prescribes the procedural steps for the taxpayer to obtain administrative review of proposed collection actions: A taxpayer must "request[] a hearing in writing under subsection (a)(3)(B) and state[] the grounds for the requested hearing." § 6320(b)(1). Section 6320(b) incorporates the 30-day period by cross-reference. A simple cross-reference is not a clear expression that the failure to request a hearing during the 30-day period is an absolute bar to a CDP hearing or that equitable tolling is categorically precluded.

We find that section 6320 is silent as to equitable tolling and further examine whether equitable tolling is otherwise consistent with the text of the statute. Equitable tolling is not permitted where it is inconsistent with the text of the relevant statute. *Brockamp*, 519 U.S. at 350–51. We consider whether the text manifests a "clear intent" to preclude equitable tolling or "leaves room for . . . flexibility." *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019) (equitable tolling of civil procedure rules). There is nothing in the text of section 6320 that suggests that the 30-day period is an absolute or inflexible deadline. Section 6320(a)(3)(B) lacks emphatic terms. The lack of "unusually emphatic" terms suggests equitable tolling is available. *Holland*, 560 U.S. at 647. The Supreme Court has allowed equitable tolling even for a deadline that emphatically states that untimely claims are "forever barred." *Kwai Fun Wong*, 575 U.S. at 420. Section 6320 does not impose, in unequivocal terms, an absolute bar to a CDP hearing when a request is untimely. Equitable tolling is consistent with the terms of the statute.

Other factors also support equitable tolling. The deadline is short. *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500; *Beggerly*, 524

U.S. at 48–49 (finding that "unusually generous" 12-year limitations period was "incompatible" with equitable tolling). The 30-day period is contained in the part of the statute directed at the contents of the IRS notice to the taxpayer of the NFTL filing. It is not directed at defining the taxpayer's rights or directed at Appeals' authority to provide CDP hearings. Rather, section 6330(b) defines the taxpayer's hearing rights, the right to one hearing before an impartial Appeals officer. Nothing in section 6320 expressly or impliedly prohibits Appeals from asserting authority to review collection actions from an untimely hearing request when equitable considerations warrant it. The remedial nature of the CDP regime also supports equitable tolling. The CDP regime is unusually protective of taxpayers who are often not represented by lawyers. The Supreme Court found that each of these factors supported equitable tolling of the section 6330(d)(1) 30-day deadline to petition this Court in *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500, and they apply equally to the 30-day period for requesting a CDP hearing.[16] The context and underlying policy of the CDP regime indicate congressional intent to allow equitable tolling of the 30-day period for requesting a hearing.

Section 6320 is easily distinguishable from the section 6511 deadline for filing tax refund claims at issue in *Brockamp*, which is not subject to equitable tolling. Section 6511 is silent as to whether equitable tolling is available but is written in "unusually emphatic form" in a "highly detailed technical manner" with an "explicit listing of exceptions" that contain both procedural and substantive limitations, and it reiterates the filing deadline several times in several different ways.[17] *Brockamp*, 519 U.S. at 350–52; *see Holland*, 560 U.S. at 646 (finding that section 6511 is silent as to whether equitable tolling is available). Equitable tolling is not one of the listed exceptions to the filing deadline. *Brockamp*, 519 U.S. at 351. These features of section 6511 are a strong indication that Congress did not intend for other "unmentioned, open-ended, 'equitable' exceptions" to be read into the statute. *Brockamp*, 519 U.S. at 352. Conversely, section 6320 is not unusually emphatic, highly detailed, or technical. Nor are there explicit exceptions in section 6320 that provide a reason to foreclose the application of the broader doctrine of equitable tolling. The Supreme

---

[16] While the Supreme Court relied on the tolling presumption in *Boechler*, these factors are equally relevant to determine congressional intent even if the presumption does not apply to the 30-day period for requesting a CDP hearing.

[17] Tolling would have also affected the amount of the tax refunds. *Brockamp*, 519 U.S. at 352.

Court considered these distinguishing characteristics of the CDP regime in *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500–01, when it held that the 30-day deadline to seek judicial review in section 6330(d)(1) is subject to equitable tolling.

The CDP regime's main, and perhaps only, similarity with section 6511 is that both are part of the Code. Respondent relies on this similarity, arguing that tax law is incompatible with equitable tolling. The subject matter of the underlying statute is relevant to determining congressional intent. *See Beggerly*, 524 U.S. at 48–49 (finding that the need for certainty in the underlying subject matter (land ownership) weighed against tolling). However, the Supreme Court has already rejected this argument in *Boechler*. *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1501–02; *see also Volpicelli v. United States*, 777 F.3d 1042 (9th Cir. 2015) (finding that equitable tolling applies to the deadline for filing a suit for wrongful levy under section 6532(c)).

Respondent argues that the IRS needs a fixed 30-day deadline so that it can determine quickly and definitively whether it may begin to collect. He argues that the CDP regime is the result of a careful balance that Congress struck between affording taxpayers an opportunity for review of collection actions and the IRS's need for efficient and prompt collection which would be subverted if equitable tolling applies and that equitable tolling would complicate and delay the collection efforts. We disagree; the CDP regime does not demand certainty or promptness without equitable considerations. Congress chose to add taxpayer protections with the CDP regime, and we must honor that choice. The purpose of the CDP regime is to bring fairness and due process to the collection process. Congress did not intend to eliminate all delays posed by untimely hearing requests as evidenced by the conference report's suggestion that in some circumstances proposed levies should be suspended even when a hearing request is untimely. H.R. Rep. No. 105-599, at 266, *as reprinted in* 1998-3 C.B. at 1020. The Treasury regulations conform with congressional intent and allow suspension of proposed levies upon an untimely hearing request on a case-by-case basis. Treas. Reg. § 301.6320-1(i)(2), Q&A-I4. This discredits respondent's argument that a "clear line" is necessary to maintain efficient tax collection.

Equitable tolling of the 30-day period under section 6320(a)(3)(B) would not create the administrative burden that respondent anticipates, in contrast to the period discussed in *Brockamp*. In *Brockamp*, 519 U.S. at 352, the Supreme Court cited the administrative burden of processing

more than "200 million tax returns" and "more than 90 million refunds" each year as a reason not to apply equitable tolling. Reading an equitable tolling exception into section 6511 for tax refund claims "could create serious administrative problems by forcing the IRS to respond to . . . large numbers of late claims . . . which, upon close inspection, might turn out to lack sufficient equitable justification." *Brockamp*, 519 U.S. at 352. In contrast Appeals closes approximately 4,100 to 7,100 equivalent hearings annually.[18] Concerns about equitable tolling "pale in comparison" to those in *Brockamp*, which dealt with a central provision of tax law. *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1501. Like the section 6330(d)(1) deadline for filing a petition with this Court, the 30-day period for requesting a CDP hearing "serves a far more limited and ancillary role in the tax collection systems." *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1501. Moreover, the short 30-day periods under sections 6320(a)(3)(B) and 6330(d)(1) for the CDP hearing request and the petition to this Court for review of Appeals' determination, respectively, are substantially shorter than the deadline for filing a refund claim under section 6511(a), the later of 3 years from the time the return was filed or 2 years from the time the tax was paid. Such short filing periods support equitable tolling. *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500.

A stated purpose of CDP hearings is to balance taxpayers' concerns about the collection action against the government's need for prompt tax collection. *See* § 6330(c)(3)(C). The CDP hearing is an opportunity for taxpayers not only to challenge the validity of the collection action but also to propose collection alternatives and discuss those alternatives with the IRS before the IRS proceeds with collection. § 6330(c)(2)(A)(iii). These principles are reinforced by the application of equitable tolling.

B.    *Legislative History*

"For those who consider legislative history relevant," *Warger v. Shauers*, 574 U.S. 40, 48 (2014), the legislative history here does not

---

[18] *See* Treasury Inspector Gen. for Tax Admin., Review of the Independent Office of Appeals Collection Due Process Program, Report No. 2022-10-043, at 6 (Aug. 18, 2022) (Appeals closed 24,568 CDP cases and 4,099 equivalent hearing cases in fiscal year 2021); *id.* Report No. 2021-10-049, at 7 (Aug. 4, 2021) (Appeals closed 21,438 CDP cases and 4,285 equivalent hearing cases in fiscal year 2020); *id.* Report No. 2017-10-055, at 3 (Sept. 11, 2017) (Appeals closed 34,229 CDP cases and 7,151 equivalent hearing cases in fiscal year 2016). Reports are available at https://www.treasury.gov/tigta/oa_auditreports.

change our conclusion. It does not clearly establish that Congress intended the 30-day period for requesting a CDP hearing to be a fixed deadline that is not amenable to equitable tolling. The conference report states congressional intent that the IRS is required to provide some type of administrative hearing to taxpayers that fail to request one within the 30-day period. It states that a postlevy hearing is to be "equivalent" to a pre-levy hearing but does not otherwise specify what type of protections taxpayers should receive. It does not indicate congressional intent as to the doctrine of equitable tolling. Significantly, it does not suggest that taxpayers should receive any different treatment except that the IRS is not required to suspend the levy. The conference report separately addresses judicial review of collection actions but says nothing about the taxpayer's right to seek judicial review when the hearing request is untimely. It does not expressly or implicitly prohibit taxpayers from having an opportunity for judicial review following an untimely hearing request. *See* H.R. Rep. No. 105-599, at 264, *as reprinted in* 1998-3 C.B. at 1018.

Arguably, the conference report's mention of postlevy hearings supports a finding that Congress intended to allow application of the broader doctrine of equitable tolling within the CDP regime. When Congress has indicated its intent that some tolling should be permitted, the Supreme Court has relied on the provision of some tolling as evidence of congressional intent that the broader doctrine of equitable tolling should apply. The statute at issue in *Bowen*, 476 U.S. at 480, expressly authorized the Secretary to provide some tolling of the filing deadline at issue (the filing period for judicial review of a Social Security benefits decision). The Supreme Court relied on the express provision for some tolling as congressional intent in favor of equitable tolling even though it is broader than the tolling permitted by the statute. The Supreme Court stated that Congress expressed a "clear intention" to allow some tolling and concluded that application of the broader doctrine of equitable tolling was "fully 'consistent with the overall congressional purpose' and is 'nowhere eschewed by Congress.'"[19] *Id.* (quoting *Honda v. Clark*, 386 U.S. 484, 501 (1967)).

We recognize that the conference report contains seemingly unqualified text that "[n]o further hearings are provided . . . as a matter

___

[19] While the Supreme Court found in *Bowen*, 476 U.S. at 480, that Congress expressed a clear intention to allow equitable tolling, the Supreme Court has not required a clearly expressed intention before it has found a deadline is subject to equitable tolling.

of right" and "after the 30 day period had expired, the IRS is not required to provide a hearing or delay any levy." H.R. Rep. No. 105-599, at 266, *as reprinted in* 1998-3 C.B. at 1020. However, neither of these statements is an absolute bar to equitable tolling. "[T]he simple fact that a deadline is phrased in an unqualified manner does not necessarily establish that tolling is unavailable." *Nutraceutical Corp.*, 139 S. Ct. at 715. Moreover, reading these two statements as congressional intent to preclude equitable tolling would make the conference report internally inconsistent because the conference report clearly indicates that with respect to levy actions taxpayers have a right to a postlevy hearing "after the 30 day period" equivalent to a prelevy hearing. In summary the conference report indicates congressional intent that a hearing is not required but is appropriate when the circumstances warrant it and does not categorically preclude equitable tolling.

Also, the Treasury regulations do not treat the latter of these statements in the conference report as a bar to equitable considerations. The regulations permit the IRS to "delay any levy" on a case-by-case basis. Treas. Reg. § 301.6320-1(i)(2), Q&A-I4. Nor will we treat these statements as manifesting congressional intent for an absolute bar to taxpayers' receiving an administrative hearing with the opportunity for judicial review. Allowing proposed levies to be suspended in some circumstances clearly indicates congressional intent that equitable considerations should be taken into account within the administrative process of the CDP regime. Nothing in the conference report suggests that Congress intended to deny judicial review when hearing requests are untimely. Post-*Boechler*, we do not interpret the conference report to impose a categorical prohibition of equitable tolling of the 30-day period for seeking Appeals' review of the collection action as such a prohibition would deny taxpayers that request a CDP hearing after the 30-day period the right to seek judicial review.

C.    *Treasury Regulations*

Respondent argues that the Treasury regulations implement Congress's choice to provide equivalent hearings to taxpayers that file untimely hearing requests and preclude equitable tolling. The regulations state that a taxpayer that does not timely request a hearing "forgoes the right to a CDP hearing" and will be "offered an equivalent hearing." Treas. Reg. § 301.6320-1(c)(2), Q&A-C7. Respondent argues that the regulations' provision of equivalent hearings is a reasonable interpretation of the statute. We do not need to address that argument because its basic premise, i.e., that the regulations categorically

preclude equitable tolling, is wrong. The regulations are silent as to equitable tolling. They allow for equitable considerations with respect to the 30-day deadline and do not interpret the deadline as strict or inflexible.

### 1. *Equivalent Hearings*

The regulations establish the procedures for equivalent hearings, and nothing in those procedures categorically precludes equitable tolling. According to the regulations, both CDP and equivalent hearings are conducted by Appeals, follow the same procedures, consider the same issues, and end with the issuance of a document that contains the same information. Treas. Reg. § 301.6320-1(i)(1), (2), Q&A-I2, Q&A-I5; *see Craig*, 119 T.C. at 258–59. None of these provisions is a categorical bar to equitable tolling. The regulations state that "[s]ection 6320 does not authorize a taxpayer to appeal the decision of Appeals with respect to an equivalent hearing." Treas. Reg. § 301.6320-1(i)(2), Q&A-I6. However, under *Craig*, if the 30-day period is tolled, we would review Appeals' conclusion from an equivalent hearing as a determination.

Equivalent hearings can be viewed as an equitable exception to the 30-day period. However, the existence of an express equitable exception to a filing deadline does not foreclose the application of the broader doctrine of equitable tolling. *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1501 (finding that a single exception that prohibits taxpayers from filing a petition because of a bankruptcy proceeding does not preclude equitable tolling); *Holland*, 560 U.S. at 647–48 (finding that equitable tolling applied to a statute that "is silent as to equitable tolling while containing one provision that expressly refers to a different kind of tolling"); *Young*, 535 U.S. at 53 (finding that an unrelated, express tolling provision in the same subsection as the limitations period does not indicate a statutory intent to preclude equitable tolling but instead demonstrates that the statute "*incorporates* traditional equitable principles"); *see also Beggerly*, 524 U.S. at 48–49 (finding no equitable tolling for a statute that "already effectively allowed for equitable tolling" by providing that the limitations period did not begin to run until the plaintiff knew or should have known about the claim). We find that the provision of equivalent hearings does not necessarily bar equitable tolling of the 30-day period.

There are instances where the discretion granted to agencies to determine the application of equitable considerations must be respected and may preclude application of equitable tolling. In *Auburn Regional*

*Medical Center,* 568 U.S. at 157, the statute provided for a 180-day administrative deadline, and the agency regulation extended the deadline for a maximum of 3 years "for good cause shown." The plaintiff filed a claim over 10 years late. The Supreme Court thought that the regulation was an adequate substitute for equitable tolling and held against equitable tolling beyond the 3-year regulatory deadline. *Id.* at 157–58. The CDP regime is clearly distinguishable from the Medicare reimbursement process at issue in *Auburn Regional Medical Center*, which is "not designed to be '"unusually protective" of claimants'" who were "sophisticated," "institutional," "repeat players" that were "assisted by legal counsel." *Id.* at 160 (quoting *Bowen,* 476 U.S. at 480); *see also Bowen,* 476 U.S. at 480 (finding equitable tolling allowed for deadline in a statute that provided for some tolling and is "unusually protective" of claimants (quoting *Heckler v. Day,* 467 U.S. 104, 106 (1984))). In the light of the remedial nature of the CDP regime, the regulations' provision of equivalent hearings does not preclude the application of the broader doctrine of equitable tolling.[20]

Nor do the regulations contain other statements precluding the application of equitable tolling. The provisions most supportive of respondent's position include Treasury Regulation § 301.6320-1(c)(2), Q&A-C4 (explaining the criteria Appeals uses to determine the timeliness of a CDP hearing request without mention of equitable tolling), Q&A-C7 (stating that if a taxpayer fails to request a CDP hearing within the 30-day period, "the taxpayer foregoes the right to a CDP hearing"), and paragraph (c)(3) (example 3) (explaining that, even if a taxpayer's untimeliness is attributable to being outside the United States, vacationing, or otherwise not receiving the CDP notice until after the 30-day period, the taxpayer still is not entitled to a CDP hearing). But, unlike the regulation the Supreme Court considered, these provisions are not irreconcilable with equitable tolling. *See Auburn Reg'l Med. Ctr.,* 568 U.S. at 156–57.

To begin with, none of the provisions specifically states that equitable tolling is unavailable, whereas the regulation in *Auburn*

---

[20] We need not consider whether to grant deference to an agency interpretation of a Treasury regulation under *Kisor v. Wilkie,* 139 S. Ct. 2400 (2019), because respondent does not argue that his interpretation should be granted deference. Furthermore, the regulation is silent on the application of equitable tolling and does not contain a genuine ambiguity, and respondent's argument that equitable tolling is precluded under the statute is not based on authoritative, technical expertise or fair and considered judgment in the light of *Boechler.*

*Regional Medical Center* "[spoke] in no uncertain terms."[21] *Id.* at 156. Additionally, where possible, we interpret regulations consistently with the governing statute. *See, e.g., Long Island Care at Home, Ltd. v. Coke,* 551 U.S. 158, 169–70 (2007); *Emery Mineral Corp. v. Sec'y of Labor,* 744 F.2d 1411, 1414 (10th Cir. 1984); *cf. League of Wilderness Defs./Blue Mountains Diversity Project v. Forsgren,* 309 F.3d 1181, 1190 (9th Cir. 2002) ("An agency simply may not interpret a regulation in a way that contravenes a statute."). As we have already found, equitable tolling is consistent with the text of section 6320. And equitable tolling may be appropriate for reasons not addressed by the regulations. That the regulations provide that exceptions generally are unavailable in certain enumerated circumstances does not mean that exceptions are never available. Accordingly, "we cannot say that . . . allowing for equitable tolling would 'essentially gut' the regulatory scheme." *See Avila-Santoyo,* 713 F.3d at 1364 n.6 (quoting *Auburn Reg'l Med. Ctr.,* 568 U.S. at 157).

## 2.  *Equitable Considerations in the Regulations*

Other parts of the Treasury regulations allow for equitable considerations and do not interpret the 30-day period as a fixed deadline. The regulations allow taxpayers to perfect defective hearing requests after the 30-day period, a clear example of equitable tolling permitted by the regulations. *See Irwin,* 498 U.S. at 96 (and cases cited thereat) (finding equitable tolling can be used to allow parties to correct defective pleadings). The regulations list information that taxpayers must include in hearing requests and permit taxpayers to provide missing information after the deadline. Treas. Reg. § 301.6320-1(c)(2), Q&A-C1(ii) and (iii). Significantly, the regulations allow late compliance with the express requirements of the statute. Section 6320(b)(1) requires that the taxpayer request a hearing in writing and state the grounds for the hearing. The regulations require that a hearing request state "[t]he reason or reasons why the taxpayer disagrees" with the collection action but allow taxpayers to provide this information after the 30-day deadline. Treas. Reg. § 301.6320-1(c)(2), Q&A-C1(ii)(E), (iii); *see id.* Q&A-C1(ii) (listing information that taxpayers must include in hearing requests). The regulations also seemingly would allow taxpayers to

---

[21] The regulation reads as follows: "A request for a Board hearing filed after [the 180-day time limit] shall be dismissed by the Board, except that for good cause shown, the time limit may be extended. However, no such extension shall be granted by the Board if such request is filed more than 3 years after the date the notice of the intermediary's determination is mailed to the provider." 42 C.F.R. § 405.1841(b) (2007).

receive CDP hearings even when they request the hearing after the 30-day period so long as they submitted a document contesting the collection action during the 30-day period although not specifically requesting a hearing. Treas. Reg. § 301.6320-1(c)(2), Q&A-C1(ii)(D), (iii). The regulations thus incorporate equitable considerations and allow for exceptions to the 30-day deadline.

### 3.    *Suspension of Levy Following Untimely Requests*

The Treasury regulations deviate from the prompt collection that respondent says section 6320 demands. Appeals can request that a collection action be suspended following an untimely hearing request on a case-by-case basis. Treas. Reg. § 301.6320-1(i)(2), Q&A-I4. Thus, Appeals is already weighing individualized equities of untimely hearing request cases. The regulations show that a deadline need not be binding when individual equities require otherwise. Notably, the part of the regulations addressing the suspension of levies implements a statutory provision that also cross-references a 30-day period for filing a CDP hearing. Section 6330(e)(1) provides that a levy action is suspended "if a hearing is requested under subsection (a)(3)(B)" of section 6330 during the pendency of "such hearing." The regulations do not interpret the cross-reference as an absolute bar to equitable considerations. Accordingly, they comport with our understanding that the cross-reference in section 6320(b)(1) to the section 6320(a)(3)(B) 30-day period does not categorically preclude equitable tolling of the 30-day period.

### IV.    *Conclusion*

Taxpayers must pursue a CDP hearing before they can seek judicial review. A categorical prohibition of equitable tolling of the filing deadline for Appeals' review of collection actions would be contrary to Congressional intent. It would mean that we would protect a taxpayer's ability to seek judicial review through equitable tolling of the section 6330(d) deadline for filing a petition while denying taxpayers the possibility of equitable tolling to obtain Appeals' review and a determination for this Court to review. Although the Supreme Court did not address the 30-day period for requesting a CDP hearing in *Boechler*, we will not apply a stricter standard to the administrative filing deadline. Congress allowed for equitable tolling of the judicial filing deadline in section 6330(d)(1). *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500–01. It would not have intended to place a separate procedural obstacle to access this Court by precluding tolling of the 30-day period for requesting a CDP hearing.

Equitable tolling furthers the basic statutory purposes of the CDP regime of due process, protection, and fairness to taxpayers. We find that congressional intent is effected by applying equitable tolling to the 30-day period. We overrule *Kennedy*, 116 T.C. 255, to the extent that it holds that Appeals is not authorized to waive the 30-day period for requesting a CDP hearing and that the 30-day period is a fixed deadline that is not amenable to equitable tolling. We hold that the 30-day period for requesting a CDP hearing may be equitably tolled where the circumstances warrant it.

We would have jurisdiction to review an erroneously issued decision letter instead of a determination where a CDP hearing request would be timely on the basis of equitable tolling. Appeals issued the Notice of Determination before the Supreme Court issued its opinion in *Boechler* and did not have reason to consider whether the facts of these cases warrant equitable tolling of the 30-day period under section 6320(a)(3)(B). Accordingly, we will remand the collection action for 2018 to Appeals to determine whether the circumstances surrounding petitioner's late filing warrant equitable tolling before we review that question.

*An appropriate order will be issued.*

Reviewed by the Court.

KERRIGAN, GALE, PARIS, MORRISON, NEGA, PUGH, ASHFORD, URDA, COPELAND, TORO, GREAVES, MARSHALL, and WEILER, *JJ.*, agree with this opinion of the Court.

FOLEY, BUCH, and JONES, *JJ.*, agree with Parts I, II, and III.A and B of this opinion, but dissent from Part III.C.

JONES, *J.*, concurring in part and dissenting in part: I concur with the opinion of the Court that Appeals has authority under section 6320 to hold CDP hearings when the taxpayer files a request after the 30-day period set forth in section 6320(a)(3)(B), as well as the corollary holding that equitable tolling of the 30-day period is not barred by the statute. *See* op. Ct. pp. 30–31. I also concur that it is appropriate to overrule *Kennedy v. Commissioner*, 116 T.C. 255 (2001), to the extent set forth in the opinion of the Court. *See* op. Ct. p. 31. But I part ways with the majority opinion where it holds that Treasury Regulation § 301.6320-1 does not preclude application of the doctrine of equitable tolling to the 30-day period. *See* op. Ct. pp. 26–30.

Our construction of section 6320 finds the statute silent or ambiguous with respect to equitable tolling.[1] In such situations, the question for the Court is whether the agency's answer is based on a permissible construction of the statute. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984); *see Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 277 (2016) (finding that a statute was ambiguous under step one of the *Chevron* doctrine, and analyzing the agency's interpretation under step two); *King v. Burwell*, 576 U.S. 473, 492 (2015) (same); *Wide Voice, LLC v. FCC*, 61 F.4th 1018, 1025–26 (9th Cir. 2023) (same); *Diaz-Rodriguez v. Garland*, 55 F.4th 697, 727 (9th Cir. 2022) (same); *3M Co. & Subs. v. Commissioner*, No. 5816-13, 160 T.C., slip op. at 253–54 (Feb. 9, 2023) (same); *Oakbrook Land Holdings, LLC v. Commissioner*, 154 T.C. 180, 195–96 (2020) (same), *aff'd*, 28 F. 4th 700 (6th Cir. 2022). Rather than undertake this analysis, the Court errs in holding that "the regulations' provision of equivalent hearings does not preclude the application of the broader doctrine of equitable tolling." *See* op. Ct. p. 28. This holding is based on the incorrect assertion that "[t]he regulation[] [is] silent as to equitable tolling." *See* op. Ct. p. 27.

Therefore, I respectfully dissent with respect to this holding and write separately to explain how the text of the regulation—and the context in which it was promulgated and amended—speaks clearly to close the door to equitable tolling. Because the regulation closes the door

---

[1] "There is no clear statement in the text of section 6320 that requires a taxpayer to comply with the 30-day deadline for Appeals to have authority to review a proposed collection action, and thus, we hold that the 30-day period is not an administrative bar." *See* op. Ct. p. 16.

that the Court's statutory construction leaves open,[2] I would direct the parties to brief the validity of Treasury Regulation § 301.6320-1 under *Chevron* (step two). I would likewise direct them to brief the severability of regulatory provisions that are permissible constructions from those that are not. *See, e.g., K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988).

I.    *Regulatory Text*

The regulation under section 6320 speaks consistently and clearly to establish Treasury's position that a request for a CDP hearing must be filed within the 30-day deadline; any request not made "timely," i.e., within the 30-day deadline, can be treated as a request for an equivalent hearing.[3] *See* Treas. Reg. § 301.6320-1(c)(1), (i)(1). As discussed *infra*, the regulation even goes so far as to emphatically reject equitable tolling of the 30-day deadline for taxpayers residing outside of the United States and clearly states that all taxpayers who want a CDP hearing must request a hearing within the 30-day period. *See id.* para. (2), Q&A-C5.

"Regulations are interpreted according to the same rules as statutes, applying traditional rules of construction." *Minnick v. Commissioner*, 796 F.3d 1156, 1159 (9th Cir. 2015) (citing *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 392 (9th Cir. 2011), *aff'd*, 567 U.S. 142 (2012)), *aff'g* T.C. Memo. 2012-345. We therefore "begin our interpretation of [a] regulation with its text." *Green v. Brennan*, 578 U.S. 547, 553 (2016). When interpreting the meaning of a regulation, the Supreme Court has given us a precise method to use. Our first and sometimes final step is to "'carefully consider[]' the text, structure, history, and purpose of a regulation, in all the ways [a court] would if it had no agency to fall back on." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415

---

[2] For example, Treasury Regulation § 301.6320-1(b)(1) conditions a taxpayer's entitlement to a CDP hearing on the filing of a request within the 30-day period. This conflicts with our conclusion that "[t]here is no clear statement in the text of section 6320 that requires a taxpayer to comply with the 30-day deadline for Appeals to have authority to review a proposed collection action." *See* op. Ct. p. 16. It is also irreconcilable with our holding that "the 30-day period is not an administrative bar." *See* op. Ct. p. 16.

[3] *See United States v. Gilliam*, 737 F. App'x 660, 666–67 (4th Cir. 2018) ("Section 6330, as incorporated by [section] 6320, is silent as to whether a hearing request must be timely. The regulations raise the issue of timeliness and use timeliness to distinguish between CDP and equivalent hearings without reference to *when* a timeliness determination must be made." (citation omitted)).

(2019) (first alteration in original) (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 707 (1991) (Scalia, J., dissenting)).

To begin, Treasury Regulation § 301.6320-1(a)(2), Q&A-A10 asks: "What must a CDP Notice given under section 6320 include?" The answer provides a list of required items, which includes, "[a] statement concerning the taxpayer's right to request a CDP hearing *during the 30-day period* that commences the day after the end of the five business day period within which the IRS is required to provide the taxpayer with notice of the filing of the NFTL." *Id.* (emphasis added).

In the same subparagraph, the regulation queries: "What are the consequences if the taxpayer does not receive or accept a CDP Notice that is properly left at the taxpayer's dwelling or usual place of business, or sent by certified or registered mail to the taxpayer's last known address?" *Id.* Q&A-A11. The answer is that a properly sent CDP Notice "is sufficient to start the 30-day period, commencing the day after the end of the five business day notification period, within which the taxpayer may request a CDP hearing." *Id.*

Further, the portion of the regulation that controls a taxpayer's right to a CDP hearing provides the following:

> Entitlement to a CDP hearing—(1) In general. A taxpayer is entitled to one CDP hearing with respect to the first filing of a NFTL (on or after January 19, 1999) for a given tax period or periods with respect to the unpaid tax shown on the NFTL *if the taxpayer timely requests such a hearing. The taxpayer must request such a hearing during the 30-day period that commences the day after the end of the five business day period within which the IRS is required to provide the taxpayer with notice of the filing of the NFTL.*

*Id.* para. (b)(1) (emphasis added).

We cannot breeze by this provision's use of the words "entitlement," "timely," and "must," as it sets out a taxpayer's right to a CDP hearing and insists that the right depends upon the filing of the request within the 30-day period. "Entitlement" is defined as "[a]n absolute right to a (usu. Monetary) benefit, such as social security, granted immediately upon meeting a legal requirement." *Entitlement*,

*Black's Law Dictionary* (7th ed. 1999).[4] "Timely," which is used as an adverb in Treasury Regulation § 301.6320-1(b)(1),[5] means "[i]n time; opportunely." *Timely*, *The American Heritage Dictionary of the English Language* (4th ed. 2000). "Must" is defined as "[t]o be obliged or required by morality, law, or custom." *Id.*, *Must*.[6]

In other words, the regulation plainly states that a taxpayer is required to file a request for a CDP hearing within the 30-day period to exercise her right to such a hearing. The implication—which is also made clear in the regulations—is that there is no equitable tolling with respect to the strict and inflexible 30-day deadline.

Consistent with this position, the regulation's guidance on requesting a hearing provides:

> Requesting a CDP hearing—(1) In general. When a taxpayer is entitled to a CDP hearing under section 6320, the CDP hearing must be requested during the 30-day period that commences the day after the end of the five business day period within which the IRS is required to provide the taxpayer with a CDP Notice with respect to the filing of the NFTL.

Treas. Reg. § 301.6320-1(c)(1).

Treasury Regulation § 301.6320-1(c)(2) continues to focus on the importance of timely filing a request. At Q-C3, the paragraph poses the question: "When must a taxpayer request a CDP hearing with respect to a CDP Notice issued under section 6320?" At A-C3, the answer is:

---

[4] *See also Entitlement*, *The American Heritage Dictionary of the English Language* (4th ed. 2000) ("The state of being entitled."); *Entitlement*, *Webster's New Universal Unabridged Dictionary* (2003) (same); *Entitled*, *The American Heritage Dictionary of the English Language* (4th ed. 2000) ("To furnish with a right or claim to something."); *Entitled, Webster's New Universal Unabridged Dictionary* (2003) ("[T]o give (a person or thing) a title, right, or claim to something; furnish with grounds for laying claim.").

[5] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 140 (2012) ("Words are to be given the meaning that proper grammar and usage would assign them.").

[6] *See also Must*, *Webster's New Universal Unabridged Dictionary* (2003) (defining the term "Must," when used as an auxiliary verb, as "to be obliged or bound to by an imperative requirement").

A taxpayer must submit a written request for a CDP hearing within the 30-day period that commences the day after the end of the five business day period following the filing of the NFTL. Any request filed during the five business day period (before the beginning of the 30-day period) will be deemed to be filed on the first day of the 30-day period. The period for submitting a written request for a CDP hearing with respect to a CDP Notice issued under section 6320 is slightly different from the period for submitting a written request for a CDP hearing with respect to a CDP Notice issued under section 6330. For a CDP Notice issued under section 6330, the taxpayer must submit a written request for a CDP hearing within the 30-day period commencing the day after the date of the CDP Notice.

At Q&A-C4, subparagraph (c)(2) provides that the rules and regulations under sections 7502 and 7503 will be used to determine the timeliness of a taxpayer's request for a CDP hearing.

Furthermore, the regulations soundly reject equitable tolling at subparagraph (c)(2), Q&A-C5. That provision asks: "Is the 30-day period within which a taxpayer must make a request for a CDP hearing extended because the taxpayer resides outside the United States?" At A-C5, the answer is:

No. Section 6320 does not make provision for such a circumstance. Accordingly, *all taxpayers* who want a CDP hearing under section 6320 must request such a hearing within the 30-day period that commences the day after the end of the five business day notification period.

(Emphasis added.)

Treasury Regulation § 301.6320-1(c) is not shy about the consequence of failing to submit a request for a CDP hearing within the 30-day period: A taxpayer who fails to make a timely request for a CDP hearing is not entitled to a CDP determination. The regulation makes no distinction between taxpayers residing inside or outside of the United States; there is one 30-day period that applies to *all taxpayers* that cannot be extended, for example, on the basis of place of residence. Treas. Reg. § 301.6320-1(c)(2), Q&A-C5.

Further, at Q&A-C7, the question presented is: "What will happen if the taxpayer does not request a CDP hearing in writing within the 30-day period that commences the day after the end of the five business day notification period?" The answer is that the taxpayer has forfeited her right to a CDP hearing:

> If the taxpayer does not request a CDP hearing in writing within the 30-day period that commences on the day after the end of the five-business-day notification period, *the taxpayer foregoes the right to a CDP hearing under section 6320* with respect to the unpaid tax and tax periods shown on the CDP Notice. A written request submitted within the 30-day period that does not satisfy the requirements set forth in A-C1(ii)(A), (B), (C), (D) or (F) of this paragraph (c)(2) is considered timely if the request is perfected within a reasonable period of time pursuant to A-C1(iii) of this paragraph (c)(2). *If the request for CDP hearing is untimely, either because the request was not submitted within the 30-day period or not perfected within the reasonable period provided, the taxpayer will be notified of the untimeliness of the request and offered an equivalent hearing.* In such cases, the taxpayer may obtain an equivalent hearing without submitting an additional request. See paragraph (i) of this section.

*Id.* (emphasis added).

To summarize, the text of Treasury Regulation § 301.6230-1 (1) establishes clearly and consistently that a taxpayer's right to a CDP hearing is conditioned on the filing of a request within the 30-day period; (2) provides that the rules and regulations under sections 7502 and 7503 will be used for determining the timeliness of a taxpayer's request; (3) rejects the notion that the 30-day deadline can be extended for taxpayers residing outside of the United States and requires that *all taxpayers* who want a CDP hearing *must* request a hearing within the 30-day period; (4) provides that failure to file a request within the 30-day period means that the taxpayer "foregoes the right to a CDP hearing"; and (5) provides that a taxpayer who fails to file a timely request will be offered an equivalent hearing.[7]

---

[7] The regulation holds the line on the 30-day period with respect to substitute CDP Notices too. Treas. Reg. § 301.6320-1(c)(2), Q&A-C8.

Yet the majority opinion states that the regulations "allow for equitable considerations with respect to the 30-day deadline and do not interpret the deadline as strict or inflexible." *See* op. Ct. p. 27.[8] I believe this conclusion is at odds with the text of the regulation.

As a consequence, the majority's reliance on *Craig v. Commissioner*, 119 T.C. 252 (2002), is misplaced. The Court's opinion states that "[t]he regulations establish the procedures for equivalent hearings, and nothing in those procedures categorically precludes equitable tolling." *See* op. Ct. p. 27. As previously discussed, I disagree. The opinion continues, recognizing that Treasury Regulation § 301.6320-1(i)(2), Q&A-I6, provides that "[s]ection 6320 does not authorize a taxpayer to appeal the decision of Appeals with respect to an equivalent hearing" but concludes that "under *Craig*, if the 30-day period is tolled, we would review Appeals' conclusion from an equivalent hearing as a determination." *See* op. Ct. p. 27.

The opinion of the Court rests on the unspoken assumption that a CDP request is "timely" when equitable tolling is applicable, but as previously discussed, the regulation is at odds with our interpretation of the statute. Under the regulation, a CDP request is timely only if it is received within the 30-day period, and the regulation repeatedly provides this rule in absolute, strict, and inflexible terms. Treas. Reg. § 301.6320-1(b)(1) ("The taxpayer must request [a CDP] hearing during the 30-day period . . . ."); *see also id.* para. (c)(1), (2), Q&A-C3 and Q&A-C4. The regulation provides in no uncertain terms that all taxpayers who want a CDP hearing must request one within the 30-day period. *See* Treas. Reg. § 301.6320-1(c)(2), Q&A-C5, Q&A-C7.

In *Craig*, a taxpayer made a timely request for a CDP hearing, but instead of holding a CDP hearing and issuing a notice of determination, the IRS erroneously held an equivalent hearing and issued a decision letter based on the mistaken belief that the taxpayer's CDP request was untimely. *Craig*, 119 T.C. at 258–59. This Court stated:

> Although the Appeals officer concludes an equivalent hearing by issuing a decision letter, as opposed to a notice

---

[8] To the extent the regulations "allow for equitable considerations with respect to the 30-day deadline," *see* op. Ct. p. 27, such leniency is with respect to perfecting and clarifying hearing requests that are filed within the 30-day period, Treas. Reg. § 301.6320-1(c)(2), Q&A-C1(iii). If a request is not so filed, the taxpayer gets an equivalent hearing.

> of determination, the different names which are assigned to these documents are merely a distinction without a difference when it comes to our jurisdiction over this case, *where a Hearing was timely requested.*

*Id.* at 258 (emphasis added). The Court continued, stating that "[u]nder the facts herein, where Appeals issued the decision letter to [the taxpayer] *in response to his timely request for a Hearing*, we conclude that the 'decision' reflected in the [equivalent hearing] decision letter issued to [the taxpayer] is a 'determination' for purposes of section 6330(d)(1)." *Id.* at 259 (emphasis added).

Under the Court's holding in *Craig*, the Court has jurisdiction to review the equivalent hearing decision letter only when it is, in substance, a section 6330(d)(1) "determination." In *Craig*, the equivalent hearing decision letter was in substance a section 6330(d)(1) "determination" because the taxpayer timely requested a CDP hearing, and thus was entitled to a determination. *Craig*, 119 T.C. at 259; *see* Treas. Reg. § 301.6320-1(f)(1). And as previously discussed, *see supra* p. 33, the regulation clearly provides that a timely request for a CDP hearing is one made within the 30-day period.

Properly applied, *Craig* does not permit the Court to review a decision letter from an equivalent hearing unless the hearing request was timely filed within the 30-day period prescribed by the regulation. *Craig*, 119 T.C. at 258–59. Viewing equivalent hearings as an equitable exception to the 30-day period, as the opinion of the Court does, *see* op. Ct. p. 27, is only possible if the request for the CDP hearing was not filed within the 30-day period. In such a case *Craig* would be inapplicable. The regulation clearly provides that Appeals can issue a determination that is reviewable by this Court only if the taxpayer requested a CDP hearing within the 30-day period. *See* Treas. Reg. § 301.6320-1(b)(1), (f)(1). *Craig* does not depart from this rule. 119 T.C. at 258–59.

The regulations proceed from the assumption that the 30-day deadline in section 6320 is fixed, i.e., not subject to equitable tolling. *See* op. Ct. p. 16 ("Respondent argues [that the 30-day deadline] is not [amenable to equitable tolling]; he argues that it is a fixed deadline and equitable tolling is categorically precluded."); *see also* op. Ct. pp. 13 n.8, 14 n.9. That premise is borne out in the text and in the dichotomy of process the regulations establish for hearing requests filed within the 30-day period (CDP hearing) as opposed to those not filed within that period (equivalent hearing). *Compare* Treas. Reg. § 301.6320-1(f)(1)

("Appeals is required to issue a Notice of Determination in all cases where a taxpayer has timely requested a CDP hearing. The taxpayer may appeal such determinations made by Appeals within the 30-day period commencing the day after the date of the Notice of Determination to the Tax Court"), *with id.* para. (i)(1) ("A taxpayer who fails to make a timely request for a CDP hearing is not entitled to a CDP hearing. Such a taxpayer may nevertheless request an administrative hearing with Appeals, which is referred to . . . as an 'equivalent hearing.' . . . Appeals will not, however, issue a Notice of Determination."), *and* Treas. Reg. § 301.6320-1(i)(2), Q&A-I6 ("Section 6320 does not authorize a taxpayer to appeal the decision of Appeals with respect to an equivalent hearing."). Of course, as the opinion of the Court points out, the regulations provide that the consequence of a timely requested hearing is a "determination," which this Court reviews while the consequence of an equivalent hearing is a "decision," which we do not review. *See* op. Ct. pp. 10–11; *see also* Treas. Reg. § 301.6320-1(f)(1).

II.     *Context of Promulgation and Amendment*

A careful consideration of the history of Treasury Regulation § 301.6320-1, *see Kisor*, 139 S. Ct. at 2415, demonstrates that it is built on the understanding that the 30-day deadline in section 6320 is fixed.[9] As explained below, such a reading is consistent with the context in which Treasury Regulation § 301.6320-1 was promulgated.

A.     *The temporary and final regulations published in 1999 and 2002, respectively, explained Treasury's view of the 30-day deadline.*

On January 22, 1999, temporary regulations implementing changes made by section 3401 of the IRS Restructuring and Reform Act of 1998 (RRA), Pub L. No. 105-206, 112 Stat. 685, 746, were published. T.D. 8810, 1999-1 C.B. 470. A notice of proposed rulemaking cross-referencing the temporary regulations was published on the same day in the Federal Register. Prop. Treas. Reg. § 301.6320-1, 64 Fed. Reg. 3461 (Jan. 22, 1999).

---

[9] It makes sense that the agency that promulgated regulations that reject equitable tolling would litigate to that end, as respondent has done. On brief, respondent propounds his view that the 30-day deadline in section 6320 is fixed. *See supra* p. 39.

The relevant portions of the preamble to Treasury Decision 8810 provide the following background:

> The legislative history accompanying RRA also explains that *Congress intended the IRS to grant an equivalent hearing to taxpayers who do not request a hearing under section 6320 within the 30-day period* that commences the day after the five business day notification period. H. Conf. Rep. No. 599, 105th Cong., 2d Sess. 266 (1998).

T.D. 8810, 1999-1 C.B. at 470 (emphasis added). The preamble continues, stating the following in the "[e]xplanation of [p]rovision" section:

> The notification must state the amount of unpaid tax, *inform the taxpayer of the right to request a hearing during the 30-day period* that commences the day after the end of the five business day notification period, inform the taxpayer of the administrative appeals available with respect to such lien and the procedures related to such appeals, and inform the taxpayer of the provisions and procedures relating to the release of liens. Unless the taxpayer withdraws the request that Appeals conduct a hearing when the taxpayer has made a *timely request* for a hearing, Appeals will hold one collection due process hearing (CDP hearing) with respect to the tax and tax period or periods specified in the CDP hearing notice (CDP Notice). . . . If a taxpayer timely requests a CDP hearing, the periods of limitation relating to collection after assessment, relating to criminal prosecutions, and relating to suits are suspended.
>
> > . . . .
>
> Lastly, the temporary regulations provide rules and procedures with respect to the administrative hearing (referred to as an "equivalent hearing") the IRS will provide to taxpayers who do not timely request a hearing under section 6320.

*Id.* at 470–71 (emphasis added).

On January 18, 2002, the final regulations were published in the Federal Register. T.D. 8979, 2002-1 C.B. 466. The preamble notes that

no comments on the temporary regulations were received during the comment period and only two comments were received after the period.[10] *Id.* at 467. It is noteworthy that neither comment challenged or even mentioned that the temporary regulations required a CDP hearing to be requested within the 30-day period; or that the temporary regulations deemed a taxpayer to have forgone his right to a CDP hearing if the request was not timely; or that the temporary regulations provided taxpayers with an "equivalent hearing," not subject to judicial review, if a request was not timely. Accordingly, these provisions were adopted in the final regulations without further explanation.

B.    *Treasury maintained its position regarding the 30-day deadline when it amended the regulations in 2006.*

On September 16, 2005, Treasury published a notice of proposed rulemaking that proposed to amend Treasury Regulation § 301.6320-1. *See* 70 Fed. Reg. 54,681 (Sept. 16, 2005). The preamble explained that the proposed amendments were designed to improve efficiency in the CDP process following six years of IRS experience. *Id.* at 54,682–83. In relevant part, the proposed amendment maintained Treasury's position that a taxpayer's failure to request a CDP hearing during the 30-day period caused that taxpayer to forfeit such a hearing. The amendment also set forth Treasury's position that the IRS could, but is not required to, treat an untimely request as a request for an equivalent hearing. The preamble provides the following in the "[e]xplanation of [p]rovisions" section:

> The IRS receives a number of tardy requests for CDP hearings. The changes to § 301.6320-1(i)(2) explain how these requests will be treated. The proposed amendments to the regulations add a new Q&A-I1 to § 301.6320-1(i)(2) to explain that a taxpayer must request an equivalent hearing in writing. *A taxpayer may obtain an equivalent hearing if the 30-day period described in section 6320(a)(3) for requesting a CDP hearing has expired. Unlike an Appeals determination in a CDP hearing, the Appeals decision in an equivalent hearing is not reviewable in court.* Under new Q&A-I1, the IRS is not required to treat a late-filed CDP request as a request for an equivalent

---

[10] The two comments were generally directed at the temporary regulations under section 6330 that were issued contemporaneously with those under section 6320. *See* T.D. 8809, 1991-1 C.B. 476.

hearing. Section 301.6320-1(c)(2), A-C7 has been amended to require that the taxpayer be notified of the right to an equivalent hearing in all cases in which a tardy request for a CDP hearing is received. It is expected that the IRS will either send the taxpayer a letter or orally inform the taxpayer that the CDP hearing request is untimely and ask if the taxpayer wishes to have an equivalent hearing.

*Id.* at 54,683 (emphasis added).

On October 17, 2006, final regulations were published in the Federal Register. T.D. 9290, 71 Fed. Reg. 60,835 (Oct. 17, 2006). They adopted the above-referenced provision that was proposed in the temporary regulations. The preamble to the final regulations discusses multiple comments that Treasury received in response to the temporary regulations. *Id.* at 60,835–39. None of the comments queried or challenged Treasury's position that a failure to file a hearing request in the 30-day period caused the taxpayer to forfeit her right to such hearing. Rather, commenters requested that Treasury provide by regulation a specific period within which the IRS would allow a timely filed request to be perfected. *Id.* at 60,836.

C.      *Supreme Court and Tax Court jurisprudence at the time of promulgation were consistent with Treasury's view.*

Treasury's position in the promulgation and amendment of Treasury Regulation § 301.6320-1 (1999–2006) is consistent with the Supreme Court's jurisprudence regarding jurisdiction at that time. Last year, the Supreme Court acknowledged that its efforts to "bring some discipline" to the use of the term "jurisdictional" have been relatively recent. *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, 1500–01 (2022) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (discussing the Supreme Court's then-recent effort to curtail "drive-by jurisdictional rulings").[11]

---

[11] A brief for amicus curiae was filed by *T. Keith Fogg* and *Audrey Patten*, counsel for The Center for Taxpayer Rights, in support of petitioner. Therein, amicus observed that as early as 2004, the Supreme Court acknowledged that the Court itself had "been too careless" in its use of the term "jurisdictional." *See* Brief of The Center for Taxpayer Rights at 4, *Organic Cannabis Found., LLC v. Commissioner*, No. 381-22L (T.C. Jan. 1, 2023) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)).

Moreover, Treasury's regulatory position was consistent with the Tax Court's jurisprudence at that time. The opinion of the Court correctly states that "[i]n *Kennedy v. Commissioner*, 116 T.C. 255, 262 (2001), we held that Appeals is not authorized to waive the 30-day period for requesting a CDP hearing and that Appeals is not required to provide a CDP hearing requested after the 30-day period." *See* op. Ct. p. 3. Accordingly, Treasury's position that the 30-day deadline was fixed, and its articulation of that position in the promulgation of the original and amended regulations, was consistent with caselaw at that time.

III.   *Conclusion*

The text of Treasury Regulation § 301.6320-1 consistently and clearly treats the 30-day deadline as a fixed deadline (including an unmistakable rejection of equitably tolling the deadline for taxpayers residing outside of the United States), and the context of its promulgation and amendment is consistent with that view. Therefore, I respectfully dissent from that portion of the opinion of the Court that holds that the regulations do not preclude application of the doctrine of equitable tolling to the 30-day period.

FOLEY and BUCH, *JJ.*, agree with this opinion concurring in part and dissenting in part.